**UNITED STATES of America, Appellee,**

v.

**Kenneth WOZNIAK, Defendant–Appellant.**

**No. 1593, Docket 96–1636.**

United States Court of Appeals, Second Circuit.

Argued June 2, 1997.

Decided Sept. 18, 1997.

Michael J. Stachowski, Buffalo, NY, for Defendant–Appellant.

Thomas S. Duszkiewicz, Assistant United States Attorney, Western District of New York, Buffalo, NY (Patrick H. NeMoyer, United States Attorney, Buffalo, NY, of counsel), for Appellee.

Before: MESKILL, JACOBS and LEVAL, Circuit Judges.

MESKILL, Circuit Judge:

Kenneth Wozniak appeals his conviction following a jury trial in the United States District Court for the Western District of New York, Arcara, *J.* The grand jury indictment charged Wozniak with one count of conspiracy to possess with intent to distribute a controlled substance containing cocaine and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of possession with intent to distribute a controlled substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1), and three counts of using a communication device to facilitate the commission of a conspiracy to distribute cocaine and methamphetamine, in violation of 21 U.S.C. § 843(b). At trial, the government presented some cocaine evidence, but most of the evidence consisted of Wozniak's distribution and use of marijuana. The trial court instructed the jury that it could find guilt on the basis of transactions involving any controlled substance regardless of which illegal substance was involved. The jury found Wozniak guilty on all counts except one of the counts charging use of a communication facility. Wozniak contends that the marijuana evidence and the district

court's charge allowing the jury to convict on the basis of marijuana transactions, where the indictment expressly alleged only cocaine and methamphetamine transactions, and could not be read to allege transactions in marijuana, constituted an impermissible constructive amendment of the indictment. We agree, and we vacate the conviction and remand to the district court for a new trial, should the government decide to reprosecute.

## BACKGROUND

### I. The Indictment

On June 23, 1992, a United States grand jury returned a seventy-six count superseding indictment charging Kenneth Wozniak and eight other co-defendants with various controlled substance and weapon offenses. Each defendant was named in count one which charged conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing cocaine and 100 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Wozniak was also charged in count two with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Additionally, Wozniak was charged in counts thirty-six, forty-one and forty-four with use of a communication device to facilitate the commission of a conspiracy to distribute cocaine and methamphetamine, in violation of 21 U.S.C. § 843(b). Prior to Wozniak's trial, all his co-defendants pleaded guilty.

### II. The Evidence at Trial

#### A. The Government's Case

At trial, the government presented the following evidence. In 1989, federal and state law enforcement agents began a criminal investigation of the Rare Breed motorcycle clubhouse in Buffalo, New York. The target of the investigation was an alleged conspiracy to distribute cocaine, methamphetamine and marijuana involving members of the club and several associates.[1] Agents testified that they became aware of Wozniak's part in the conspiracy during an intercepted telephone conversation between Wozniak and Brian Karas, an indicted member of the motorcycle club. On January 26, 1991, Wozniak called Karas at the club to inform him that a load of "fish" had come in that morning. The agents interpreted the word "fish" to be slang or code for marijuana.

Several unindicted co-conspirators testified about Wozniak's business dealings and personal use of marijuana.[2] Glenn Wolffe testified that he had known Wozniak since 1987, when he met Wozniak through John Sacco, a central figure in the marijuana conspiracy. According to Wolffe, Wozniak, who owned and operated a security company, provided anti-surveillance services for Sacco and other members of their conspiracy. Such services included electronic "sweeps" of their homes and telephones to search for listening devices that may have been planted by law enforcement agents. Wozniak, himself, corroborated his anti-surveillance services, as did several other witnesses.

Wolffe stated that Wozniak occasionally visited Sacco's house and that he witnessed Wozniak smoke marijuana there on several occasions. He testified that in 1988, Wozniak accompanied him and several others on a trip to Detroit during which Wozniak smoked marijuana.[3] Wolffe further testified that, in either the spring or summer of 1991, he witnessed Anthony Santa Maria provide approximately one pound of marijuana to Wozniak. Wolffe recalled that, during this transaction, Wozniak told him and Santa Maria that Wozniak had access to a boat and the ability to transport marijuana across the Ni-

---

1. The investigation led to several multiple-defendant indictments. Individuals were charged for their part in either the cocaine and methamphetamine conspiracy or a large marijuana distribution conspiracy. While most of the government's evidence against Wozniak involved marijuana, the indictment naming him mentioned cocaine and methamphetamine only.

2. The witnesses, including Anthony Santa Maria, Glenn Wolffe and Joseph Orcutt, were charged in the marijuana indictments but not the cocaine and methamphetamine indictment.

3. Anthony Santa Maria testified that, among the purposes of the trip, was to pay someone in Detroit "at least over $200,000" related to the marijuana operation that was going on at the time.

agara River from Canada. Finally, Wolffe testified that he once had observed John Sacco give Wozniak a stack of money about six to eight inches high, wrapped with three rubber bands. He stated that this is the way they normally packaged the cash proceeds of their drug operation.[4]

Santa Maria testified that he never provided Wozniak with a one pound quantity of marijuana but that he did provide him with small amounts for personal use and that he smoked marijuana with Wozniak on several occasions.

The only evidence offered by the government of Wozniak's involvement with cocaine was the testimony of Vincent Petrinec. Petrinec, a key figure in all of the alleged drug conspiracies, testified that one evening while tending bar at the Rare Breed clubhouse, he sold an "eight-ball" of cocaine to Brian Karas and Wozniak and that they then used the cocaine at the clubhouse. An eight-ball contains one-eighth of an ounce, or three and one-half grams of cocaine. According to Petrinec, it is an amount purchased for personal use rather than for resale. The government offered no evidence of Wozniak's involvement with methamphetamine.

During the government's case-in-chief, Wozniak moved the court for an order striking all testimony concerning possession of marijuana and all testimony relating to the marijuana distribution conspiracy for which he was not indicted. The court denied his motion.

### B. The Defendant's Case

Wozniak testified that the intercepted telephone conversation on January 26, 1991, actually involved a quantity of fish. This testimony was corroborated by several witnesses, including Wozniak's wife. Wozniak further testified that he had not smoked marijuana since the early seventies and that he had never seen a large bale of marijuana.

### C. The Government's Rebuttal

Among its rebuttal witnesses, the government presented the testimony of Joseph Orcutt. Orcutt rebutted Wozniak's statement that he had not smoked marijuana, by testifying that the two had smoked marijuana together on several occasions. Orcutt also testified that after a discussion with John Sacco, he provided Wozniak with a thirty pound bale of marijuana by placing it in the trunk of Wozniak's car in the spring of 1989. Because the transaction occurred before the date of the alleged conspiracy in the indictment, the government was foreclosed from presenting this evidence during its case-in-chief. The jury was instructed to consider the evidence only for impeachment purposes.

### III. The Jury Instructions

Wozniak requested that the court dismiss the indictment against him because the government's evidence was limited to proof of a marijuana conspiracy. Wozniak argued that the evidence unconstitutionally broadened the bases of conviction and resulted in a constructive amendment of the indictment. The government argued that the difference between the indictment and the proof at trial amounted to an immaterial variance. The court denied Wozniak's request and then considered both sides' proffered jury instructions.

The government took the position that the precise controlled substance is not a material element of a narcotics conspiracy and that proof of Wozniak's involvement with any controlled substance could support a conviction. The district court agreed, and gave jury instructions which stated in pertinent part:

[I]t does not matter that a specific count of the indictment charges that a specific controlled substance was involved in that count, and the evidence indicates that, in fact, a different controlled substance was involved.

So long as you are satisfied that the government has proven beyond a reasonable doubt that some controlled substance was involved in the acts charged in that count

---

4. Santa Maria testified that he believed this money was a loan to Wozniak so that he could expand his security business.

of the indictment, it does not matter if such controlled substance is different than that alleged in that count of the indictment.

The jury returned guilty verdicts on every count except one of the counts charging use of a communication facility. Wozniak was sentenced to thirty months of incarceration. This appeal followed.

## DISCUSSION

■ On appeal, Wozniak contends that the district court's charge allowing the jury to convict on the basis of marijuana transactions, where the indictment alleged only cocaine and methamphetamine transactions, and could not be read to allege transactions in marijuana, constituted an impermissible constructive amendment of the indictment. We agree.

■ The Fifth Amendment states, in pertinent part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Thus, a defendant has the right to be tried only on charges contained in an indictment returned by a grand jury. "An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively." *United States v. Clemente,* 22 F.3d 477, 482 (2d Cir.), *cert. denied sub nom. Demolfetto v. United States,* 513 U.S. 900, 115 S.Ct. 258, 130 L.Ed.2d 178 (1994).

> A constructive amendment occurs when the government's presentation of evidence and the district court's jury instructions combine to "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury."

*United States v. Vebeliunas,* 76 F.3d 1283, 1290 (2d Cir.) (quoting *Clemente,* 22 F.3d at 482), *cert. denied,* —— U.S. ——, 117 S.Ct. 362, 136 L.Ed.2d 253 (1996); *see also United States v. Miller,* 471 U.S. 130, 138–45, 105 S.Ct. 1811, 1819–20, 85 L.Ed.2d 99 (1985); *Stirone v. United States,* 361 U.S. 212, 215–19, 80 S.Ct. 270, 272–74, 4 L.Ed.2d 252 (1960); *United States v. Patino,* 962 F.2d 263, 265–66 (2d Cir.), *cert. denied,* 506 U.S. 927, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992); *United States v. Mollica,* 849 F.2d 723, 729 (2d Cir.1988).

■ A constructive amendment of an indictment is a *per se* violation of the Grand Jury Clause of the Fifth Amendment "that require[s] reversal even without a showing of prejudice to the defendant." *Clemente,* 22 F.3d at 482. Of course, not all alterations of the indictment are unconstitutional. "[W]e have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *Patino,* 962 F.2d at 266 (internal quotation marks omitted); *see also United States v. Heimann,* 705 F.2d 662, 666 (2d Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2178, 80 L.Ed.2d 560 (1984) ("[P]roof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment.").

Wozniak argues that while the indictment specifically charged him with offenses involving cocaine and methamphetamine, the thrust of the prosecution's case, which consisted almost entirely of marijuana evidence, and the court's jury charge completely changed the theory of the case. According to Wozniak, he was not given notice of the core criminality to be proven at trial. We agree, but we are careful to point out that our conclusion is limited to the specific circumstances in this case.

As a result of a lengthy investigation into the narcotics activity of the Rare Breed motorcycle clubhouse, at least two multiple-defendant indictments were handed down. In addition to the cocaine and methamphetamine related indictment under which Wozniak was charged, another indictment, based entirely on a marijuana distribution conspiracy, also was drawn. The government could have placed Wozniak under the marijuana indictment, but instead only charged him with cocaine and methamphetamine related offenses.

Also, the indictment could have charged Wozniak generally with offenses involving controlled substances in violation of 21

U.S.C. § 841(a)(1) without mention of any specific drug.[5] Had all the counts of the indictment not specified cocaine and methamphetamine, the conviction based solely on marijuana evidence might stand. If the indictment had been drawn in general terms and Wozniak was in doubt about the controlled substance alleged, he could have sought a bill of particulars pursuant to Fed. R.Crim.P. 7(f) setting forth the specific allegations of the offense charged. Also, the indictment did not contain a catch-all provision that would allow a conviction for Wozniak's involvement with any illegal substance.

The Supreme Court has made it clear that an indictment drawn in general terms may support a conviction on alternative bases. For example, in *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), an indictment for a violation of the Hobbs Act, 18 U.S.C. § 1951, alleged the unlawful interference with interstate commerce by obstructing the importation of sand into Pennsylvania by the owner of a plant which used sand for the manufacture of concrete. *Id.* at 213–14, 80 S.Ct. at 271–72. However, the district judge allowed the government to offer alternative evidence of an effect on interstate commerce not only in sand but also in steel shipments from a plant in Pennsylvania into Michigan and Kentucky. *Id.* at 214, 80 S.Ct. at 271–72. The trial judge charged the jury that defendant's guilt could rest on either theory. *Id.* The Supreme Court reversed the conviction because defendant might have been "convicted on a charge the grand jury never made against him." *Id.* at 219, 80 S.Ct. at 274. The Court stated:

> It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened.

*Id.* at 218, 80 S.Ct. at 274; *see also United States v. Zingaro*, 858 F.2d 94, 99 (2d Cir. 1988); *Mollica*, 849 F.2d at 729.

Had Wozniak been aware that the government would seek a conviction mostly based on marijuana evidence, he might have chosen a different trial strategy. He might have decided not to put his credibility in issue by testifying in his own defense. During his direct testimony, Wozniak testified that he did not use marijuana nor had he ever seen a large bale of marijuana. To rebut this testimony, Joseph Orcutt stated that not only did he smoke marijuana with Wozniak, but that he placed a thirty pound bale of marijuana in the trunk of Wozniak's car. Although this evidence was offered for impeachment purposes only, it was certainly damaging to Wozniak and may have persuaded the jury of Wozniak's involvement in the conspiracy to distribute marijuana. Wozniak might not have subjected himself to this damaging rebuttal evidence if he had been aware that the court would allow a conviction under this indictment based solely on marijuana evidence.

The government contends that the precise controlled substance is not a material element of a narcotics conspiracy because 21 U.S.C. § 841(a)(1) makes it illegal to distribute or possess with intent to distribute any controlled substance. To support its argument, the government relies on *United States v. Knuckles*, 581 F.2d 305 (2d Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978), as it did below in support of its proposed jury instructions. In *Knuckles*, defendants had been charged with distribution of heroin under 21 U.S.C. § 841. *Id.* 581 F.2d at 307. At trial, defendants put in evidence that in fact the substance distributed was cocaine. *Id.* 581 F.2d at 308–09. The trial court charged the jury that it could convict for distribution of heroin or cocaine. *Id.* 581 F.2d at 308. We affirmed the conviction, finding no substantial prejudice in the variance between the indictment and the proof. *Id.* 581 F.2d at 311–12.

This case is clearly distinguishable from *Knuckles*. In *Knuckles*, we first established that

---

**5.** 21 U.S.C. § 841(a)(1) states that "it shall be unlawful for any person knowingly or intentionally—to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a *controlled substance*." (emphasis added).

[t]he general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense.

*Id.* 581 F.2d at 311 (quoting *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935).) We then held that "[t]he defendants in the case at bar were sufficiently appraised of the charges laid against them in ... the indictment." Wozniak, unlike the defendants in *Knuckles,* well may have been surprised by the introduction of evidence of narcotics other than what was alleged in the indictment.[6]

At least as important, our decision in *Knuckles* was based on a single set of facts— "the time, place, people, and object proved at trial [were] in all respects those alleged in ... the indictment." *Id.* The operative facts were the same even if the prosecution failed to realize that the controlled substance in the transaction charged was cocaine rather than heroin. The count of the indictment at issue in *Knuckles* was a substantive offense. It dealt with a specific transaction occurring on a specific date. Therefore, the defendants were aware of the "core of criminality" which was to be proven at trial. The exact controlled substance did not affect the government's evidence or the ability to defend.

In this case, the government decided to pursue separate indictments against Wozniak's alleged co-conspirators for either cocaine or marijuana. Wozniak was charged in count one only for his part in a large-scale cocaine and methamphetamine distribution conspiracy spanning over a one-and-a-half-year period. The count stated no single set of operative facts that would alert Wozniak that at trial he would face marijuana evidence as well as whatever cocaine evidence the government possessed. If the co-

caine and methamphetamine charges were interchangeable with and arose out of the same set of operative facts as the marijuana charges, the government would have had little reason to seek separate conspiracy indictments. *Knuckles* does not control the outcome here on the conspiracy conviction. Although the other three counts in the indictment, on which Wozniak was convicted, alleged specific dates, these convictions suffer from the same defect as the conspiracy count. Evidence of cocaine and marijuana activities were separate and distinct. The government's sparse evidence of Wozniak's involvement in cocaine and the court's jury charge relying on *Knuckles* allowed the jury to convict Wozniak of offenses based on transactions not charged.

In sum, we hold that the district court's charge that the jury could convict regardless of which illegal substance was involved coupled with the prosecution's evidence, amounted to a constructive amendment of the indictment. Because all five counts in the indictment specifically mentioned cocaine and methamphetamine and not marijuana, and could not be read to charge a marijuana offense, the conviction on all counts must be vacated. Therefore, we vacate the judgment of conviction in its entirety and remand to the district court for a new trial should the government decide to reprosecute. We express no view about any potential defenses that might be raised as a bar to reprosecution.

---

6. The sufficiency of the government's evidence is not an issue before us and we do not address it. However, to further distinguish this case from *Knuckles,* we note that a large part of the evidence presented by the prosecution dealt with Wozniak's *use* of marijuana rather than his possession with intent to *distribute* cocaine.