16-4013-cr
*United States v. Arreola*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of February, two thousand eighteen.

Present:
      RALPH K. WINTER,
      DEBRA ANN LIVINGSTON,
      DENNY CHIN,
         *Circuit Judges.*

—————————————————————

UNITED STATES OF AMERICA,

        *Appellee*,

     v.                                16-4013-cr

PATRICK EDWARDS, also known as Ernest Williams, also known as Michel Jaques, also known as Fifty.

        *Defendant*

JUAN PABLO ARREOLA

        *Defendant-Appellant*.

—————————————————————

For Defendant-Appellant:     Nicholas J. Pinto, New York, NY.

For Appellee:     Robert W. Allen, Rebekah Donaleski, Anna M. Skotko Assistant United States Attorneys, *for* Geoffrey S. Berman, Interim United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Juan Pablo Arreola appeals from a judgment entered by the United States District Court for the Southern District of New York, convicting him of one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. After Arreola was indicted on December 10, 2015, three of Arreola's co-conspirators, Louis Lombard, Miguel Chavez and Patrick Edwards, pleaded guilty to their respective roles in the conspiracy and testified against Arreola at trial, pursuant to cooperation agreements. On July 21, 2016, after a four-day trial, the jury returned a guilty verdict. The district court determined at Arreola's sentencing that the government proved by "at least a preponderance of the evidence," based on trial testimony from Lombard, Chavez, and Edwards, that Arreola was involved in a conspiracy to distribute at least "57 kilos of heroin[] and 78 kilos of cocaine." J.A. 32. On November 21, 2016, the district court entered a judgment of conviction and sentenced Arreola principally to 180 months of imprisonment followed by five years of supervised release. This appeal followed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.      Evidence of Arreola's Cocaine Trafficking

The first issue on appeal is whether the district court erred in admitting evidence that Arreola was involved in distributing cocaine.   Arreola argues that the district court abused its discretion because his cocaine sales constituted uncharged criminal conduct separate from the charged heroin conspiracy, and that evidence of those sales was inadmissible pursuant to Federal Rule of Evidence 404(b).   Alternatively, a limiting instruction was required.   We disagree. The district court properly held that evidence of Arreola's cocaine dealing was not subject to Rule 404(b) and should be admitted as direct evidence, without a limiting instruction, because "the uncharged cocaine trafficking [wa]s inextricably intertwined with the charged heroin trafficking and . . . [wa]s also background to the conspiracy here to show the relationship between and among the defendant and the cooperating witnesses."   J.A. 21; *see United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." (citations and internal quotation marks omitted)); *United States v. Gaggi*, 811 F.2d 47, 61 (2d Cir. 1987) (concluding that limiting instructions are not required for such direct evidence).

The record is replete with examples of how Arreola's uncharged acts of cocaine dealing were "inextricably intertwined" and "arose out of the same transactions" as the charged acts of heroin dealing.   *See Carboni*, 204 F.3d at 44.   Edwards testified at trial that Arreola supplied him with heroin and cocaine, and directed him to distribute both drugs together on a monthly basis, usually in combined shipments comprised of a few kilograms of cocaine and a few kilograms of heroin.   Lombard also testified that Arreola supplied him with at least one

3

kilogram of cocaine while they were primarily engaged in heroin trafficking, and Arreola explained to Lombard that he sourced the cocaine and heroin from Mexico. Arreola's relationship with some of his co-conspirators was also based on the fact that he distributed both cocaine and heroin, and so the government's decision to include cocaine dealing in the narrative was "necessary to complete the story of the crime on trial" and provide background information on Arreola's conspiracy to act as a wholesale supplier of drugs. *Id.* at 44; *see also United States v. Escalera*, 536 F. App'x 27 (2d Cir. 2013) (summary order) ("Even if the sales were not inextricably intertwined, the district court would have had the discretion to admit them as background to the conspiracy, helping the jury understand how the illegal relationship among the participants developed, and how [the defendant's] role in the conspiracy evolved."). Chavez first introduced Arreola to Edwards because Chavez knew Arreola "was a good source . . . [for] getting cocaine." *See* S.D.N.Y. 15-cr-824 doc. 65, at 327 (trial transcript). In addition to facilitating Arreola's heroin and cocaine shipments to Edwards' customer in New York, Edwards also personally handled several of Arreola's larger heroin shipments to Lombard and Chavez, by using the same shipping method as in earlier transactions with Arreola. The district court was thus well within its discretion, and certainly did not "act[] arbitrarily and irrationally," in admitting evidence of Arreola's cocaine dealing as direct evidence of the charged heroin conspiracy. *See United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (district court's evidentiary rulings are reviewed for abuse of discretion and we reverse only if "the district court acted arbitrarily and irrationally" (citation omitted)).

## II. Constructive Amendment of the Indictment

Arreola next argues that his indictment was constructively amended because the district court admitted evidence of his cocaine dealing without a limiting instruction, which "broaden[ed] the possible bases for conviction from that which appeared in the indictment."

4

*United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (citation omitted). "We exercise de novo review of a constructive amendment challenge, which is a *per se* violation of the Grand Jury Clause of the Fifth Amendment." *Id.* at 225–26 (citation omitted). To prove a constructive amendment, Arreola must demonstrate that "there is a substantial likelihood that [he] may have been convicted of an offense other than that charged in the indictment." *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001) (citation omitted). Arreola did not preserve his objection below, so he must also make a showing of plain error. *See United States v. Flaharty,* 295 F.3d 182, 195 (2d Cir. 2002) (plain error requires a showing that "(1) there was error, (2) the error was 'plain,' [and] (3) the error prejudicially affected his 'substantial rights.'" (quoting *United States v. Olano,* 507 U.S. 725, 732 (1993)). Arreola fails to meet this heavy burden.

"[W]e have 'consistently permitted significant flexibility in proof, provided that the defendant was given **notice** of the **core of criminality** to be proven at trial,'" in part because "[p]roof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment." *Rigas*, 490 F.3d at 228 (internal quotation marks, footnote, and citations omitted) (emphasis in original). Arreola relies heavily on *United States v. Wozniak*, 126 F.3d 105, 110 (2d Cir. 1997) to argue that if he knew "the government would seek a conviction mostly based on cocaine evidence, he might have chosen a different trial strategy." Def.-Appellant Reply Br. 7 (citing *Wozniak*, 126 F.3d at 110). This argument is unconvincing. Arreola should have been well aware that evidence of his cocaine dealing would be introduced at trial. The indictment charged that Arreola was involved in a conspiracy with Edwards to distribute controlled substances, and as discussed above, Edwards was a cooperating government witness who Arreola knew could provide testimony regarding their conspiracy to distribute both cocaine and heroin. *See Wozniak*, 126 F.3d at 111 ("The operative facts were the same even if the

5

prosecution failed to realize that the controlled substance in the transaction charged was cocaine rather than heroin. . . . Therefore, the defendants were aware of the 'core of criminality' which was to be proved at trial."). A few weeks before trial, moreover, the government filed a motion *in limine* seeking to admit evidence of Arreola's cocaine dealing, and the parties argued the motion in a hearing that was held one week before trial. Defense counsel even used the fact that Arreola was only charged with heroin dealing to Arreola's advantage, by arguing that the failure to charge Arreola with cocaine dealing cast doubt on the credibility of the government's witnesses. *See* S.D.N.Y. 15-cr-824 doc. 67, at 562–63 (trial transcript) ("The charge of cocaine is not in this case and it's from the same witnesses that the government is relying upon the charge that is in this case. Is there a lack of credibility? These were desperate men in desperate times, in desperate straits."). On rebuttal, the government then specifically argued, "Does the fact that the defendant isn't charged with cocaine in the indictment have anything to do with the evidence that you heard? Obviously not." *Id.* at 577.

Furthermore, *Wozniak* is inapposite because in that case, the jury was improperly instructed that "[s]o long as you are satisfied that the government has proven beyond a reasonable doubt that some controlled substance was involved in the acts charged in that count of the indictment, it does not matter if such controlled substance is different than that alleged in that count of the indictment." *Wozniak*, 126 F.3d at 108–09.[1] In sharp contrast, the jury here was repeatedly instructed that to find Arreola guilty, they specifically had to find that Arreola agreed to distribute heroin. The verdict form also required the jury to make a specific finding of how

---

[1] *Wozniak* is also distinguishable because Arreola does not argue here that the government presented insufficient evidence that he was involved in a conspiracy to distribute heroin. *See Wozniak*, 126 F.3d at 111 (finding constructive amendment because "[t]he government's sparse evidence of [the defendant's] involvement in cocaine ***and*** the court's jury charge . . . allowed the jury to convict [the defendant] of offenses based on transactions not charged.").

much heroin was involved in the conspiracy. Arreola's speculative contention that the jury was nevertheless confused is contrary to "the law's general assumption that juries follow the instructions they are given." *United States v. Agrawal*, 726 F.3d 235, 258 (2d Cir. 2013). Based on the record before us, we cannot say that Arreola has shown a "substantial likelihood that [he] may have been convicted of an offense other than that charged in the indictment." *Thomas*, 274 F.3d at 670 (citation omitted).

## III. Improper Vouching

Finally, Arreola argues that the government improperly vouched for its witnesses on summation by linking its credibility to that of its witnesses and referring to facts not in evidence. Specifically, Arreola challenges the second paragraph of the following excerpt from the government's rebuttal:[2]

> [S]o Lombard is at this meeting, Lombard turns to Chavez and Ed[wards] and says: Hey, guys, bad news. The DEA is on to us, but I have got this awesome plan for what we are going to do if we get caught. Here is the awesome plan:
>
> So, I am going to get arrested, I am going to go to jail—downside, but gotta do it—and then I am going to sit through hours and hours of meetings with the government where I am going to be interrogated. And I am going to know all along that the government is going to be doing background research, they are going to be investigating what I am telling them to try to see if I am lying. If I am lying, I know this is a risk, if I am lying, if they find out that I am lying, I'm going to go to jail for a long time. No way around that. No way around that.

S.D.N.Y. 15-cr-824 doc. 65, at 582 (trial transcript).

To warrant reversal of a conviction, an improper remark by a prosecutor must "cause[] the defendant substantial prejudice so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005)

---

[2] The first paragraph is reproduced here to provide context for better understanding the challenged statement in the second paragraph.

(quoting *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)). And where, as here, Arreola "did not object to the [government's] remarks at trial, reversal is warranted only where the remarks amounted to a 'flagrant abuse.'" *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) (quoting *United States v. Araujo*, 79 F.3d 7, 9 (2d Cir. 1996)). There is no such flagrant abuse here. The challenged statement was properly used as a hypothetical during the government's rebuttal in order to point out how defense counsel's assertion that "all three of [the government's witnesses] lied to falsely convict Juan Pablo Arreola" was implausible. S.D.N.Y. 15-cr-824 doc. 65, at 581 (trial transcript); *see United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) ("Prosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility."); *Carr*, 424 F.3d at 227 ("[T]he government is allowed to respond to an argument that impugns its integrity or the integrity of its case, and when the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion." (citation omitted)).

Arreola's argument that the government should not have "referred to facts not in evidence" is also unconvincing. Def.-Appellant Br. 22 (referring to the statement that "the government is going to be doing background research, they are going to be investigating what I am telling them to try to see if I am lying"). The challenged hypothetical was clearly used by the government as a "rhetorical flourish," *United States v. Williams*, 690 F.3d 70, 76 (2d Cir. 2012), to point out how defense counsel's "explanation . . . for why those three cooperating witnesses would have said what they said about his client . . . makes no sense whatsoever," S.D.N.Y. 15-cr-824 doc. 65, at 584 (trial transcript). *See also Williams*, 690 F.3d at 76 ("Viewed in context, this statement was not improper vouching but a rhetorical flourish bringing the rebuttal summation to a

8

close."). We have also specifically held that it is proper for the government to explain the incentives for a cooperating witness to tell the truth. *See Carr*, 424 F.3d at 228. And after using the hypothetical as a rhetorical tool, the government repeatedly reminded the jury to consider evidence in the record. *See, e.g.*, S.D.N.Y. 15-cr-824 doc. 65, at 587 (trial transcript) ("[W]hen you go back to deliberate, make sure that the arguments that [defense counsel] made are actually supported by the record in this case."); *id.* at 591–92 ("Think about all the evidence in this case, the BBM, the recordings, the testimony you heard from three cooperating witnesses."); *id.* at 592 ("You know that the evidence all lines up . . . ."); *see also United States v. Spinelli*, 551 F.3d 159, 169 (2d Cir. 2008) ("The prosecutor is of course entitled to argue forcefully and vigorously to the jury in support of her witness's credibility. But the argument must be based on evidence in the record."). "In a particular context . . . what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference to the evidence in the case." *Perez*, 144 F.3d at 210. That is precisely what happened here. The government's comments did not rise to the level of "flagrant abuse," *Germosen*, 139 F.3d at 128, nor did they cause Arreola to suffer "substantial prejudice," *Carr*, 424 F.3d at 227.

\* \* \*

We have considered Arreola's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9