09-2541-cr
*United States v. D'Amelio*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

————————————————

August Term, 2009

(Argued: April 29, 2010      Decided: June 13, 2012)

Docket No. 09-2541-cr

————————————————

UNITED STATES OF AMERICA,

*Appellant*,

v.

DANIEL D'AMELIO,

*Defendant-Appellee*.

————————————————

Before:  RAGGI, HALL, and CHIN, *Circuit Judges*.

————————————————

Defendant-Appellee Daniel D'Amelio was convicted, after a jury trial, of attempted sexual enticement of a minor, pursuant to 18 U.S.C. § 2422(b).  The district court vacated the conviction and granted D'Amelio's motion for a new trial on the ground that the jury instructions constructively amended the indictment.  The government appealed.  We hold that the indictment was not constructively amended and therefore reverse and remand.

JESSE M. FURMAN (Randall W. Jackson *on the brief*), Assistant United States Attorneys, *of counsel for* Preet Bharara*,* United States Attorney for the Southern District of New York, *for Appellant United States of America*.

JONATHAN I. EDELSTEIN, New York, New York, *for Defendant-Appellee Daniel D'Amelio*.

HALL, Circuit Judge:

Appellant, the United States of America (the "government"), appeals from the June 1, 2009, amended decision of the Southern District of New York (McMahon, *J.*) that vacated Defendant-Appellee Daniel D'Amelio's conviction, after a jury trial, of one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), and granted his motion for a new trial under Fed. R. Crim. P. 33. The district court held that its jury instructions resulted in a constructive amendment of the indictment because the difference between the language of the "to wit" clause of the indictment, which charged D'Amelio with using the Internet as a facility of interstate commerce in committing the crime, and the jury instructions, which permitted proof of D'Amelio's use of the Internet *and* the telephone in committing the crime, altered an essential element of the charge to such an extent that it violated the Fifth Amendment's Grand Jury Clause. On appeal, the government argues that the district court erred because the deviation between the text of the indictment and the jury charge neither affected the "core of criminality" proven at trial nor modified an "essential element" of the crime, nor did it leave D'Amelio open to be charged again for the same offense. We agree with the government's contentions and therefore reverse the district court's decision and remand for further proceedings consistent with this opinion.

2

**BACKGROUND**

**I.       Facts**

This case stems from contacts occurring online, on the telephone, and in person between D'Amelio, a 47-year-old architect and part-time screenwriter, and an individual with the online screen name "MaryinNYC1991" ("Mary") during August and September of 2004. "Mary's" online profile indicated that she was a twelve-year-old girl, when in reality she was created by a team of New York City Police Department ("NYPD") officers: Detective James Held posed as "Mary" during the Internet chats, and twenty-three-year-old Detective Anne Psomas posed as "Mary" during telephone conversations and in-person meetings with D'Amelio. The content of the Internet and in-person conversations between "Mary" and D'Amelio ranged from innocuous topics such as D'Amelio's work as a screenwriter to more suggestive topics such as "Mary's" sexual history and what D'Amelio enjoyed doing sexually with girls. The NYPD arrested D'Amelio as he left a New York City park with "Mary," following their second meeting.

On June 15, 2007, a grand jury returned a one-count indictment charging D'Amelio with attempted enticement of a minor for the purpose of engaging in sexual activity, in violation of 18 U.S.C. § 2422(b). The indictment contains a single substantive paragraph, which reads as follows:

> From on or about August of 2004, up to and including in or about September of 2004, in the Southern District of New York, DAN D'AMELIA [sic], a/k/a "Wamarchand@aol.com," the defendant, unlawfully, willfully, and knowingly, did use a facility and means of interstate commerce to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do so, *to wit, D'AMELIA [sic] used a computer and the Internet* to attempt to entice, induce, coerce, and persuade a minor to engage in sexual activity in violation of New York States laws.

3

J.A. 14 (emphasis added). In July 2007, eighteen months prior to trial, the government informed

D'Amelio of its intention to introduce evidence of the telephone conversations between

D'Amelio and "Mary." The government subsequently provided D'Amelio with recordings of

the telephone conversations and at trial introduced transcripts of the nine Internet chat sessions

between D'Amelio and "Mary," copies of the e-mails D'Amelio sent to "Mary," and recordings

of their six telephone calls and two meetings.

In response to the government's requested jury instructions, D'Amelio objected, *inter alia*,

to any reference in the proposed instructions that he used a telephone to commit the offense. He

asserted that the jury charge constituted an impermissible constructive amendment of the

indictment, which only referred to his use of the Internet,[1] particularly since the government did

not obtain "a general indictment encompassing all the methods of commission permitted by 18

U.S.C. § 2242(b)." J.A. 66. The court denied the motion, stating:

> Both the internet and telephone are, of course, facilities of interstate commerce. The question is whether by including the to wit clause, the [government] limited itself to proving that the defendant is guilty of using only the facility of interstate commerce that is specified in the to wit clause, that being the internet, or whether . . . the government can argue that more than one facility of interstate commerce was used.
>
> I wish the government would leave the to wit clauses out of indictments, or would include, in the to wit clauses, everything of which it has evidence. And the government certainly knew that it had evidence of telephone conversations that were material to this case.
>
> However, having read a number of cases . . . I am convinced that this does not constitute a constructive amendment of the indictment, because the evidence that the government proposes to introduce at trial concerns the same course of conduct

---

[1] While the indictment refers to both "a computer and the Internet," the trial record indicates that these two facilities or means of interstate commerce may be considered interchangeable because all computer-based communications at issue, *e.g.*, instant messages and e-mails, were transmitted via the Internet.

consisting of a series of conversations that were designed to cultivate a relationship, with, and ultimately to induce, a minor to come to a meeting for the purpose of having sex.

J.A. 276-77.

The court held that the government's reliance on communications over the telephone constituted, at most, a variance in the indictment, and that D'Amelio could not show prejudice because he had been aware for approximately eighteen months prior to trial that the government intended to introduce recordings of his and "Mary's" telephone conversations. Accordingly, the district court instructed the jury as follows:

> The third element the government must prove beyond a reasonable doubt is that the defendant used a facility or means of interstate commerce in order to attempt to persuade, induce, or entice the person he believed to be a minor to engage in sexual activity. Both the telephone and the internet qualify as facilities or means of interstate commerce. Therefore, you must determine whether the government has proven beyond a reasonable doubt that a communication that constitutes an attempt to persuade, induce, or entice a person to commit a sexual act, was actually transmitted by means of a telephone, or the internet, or both.

Trial Tr. at 483. After two days of deliberations, the jury returned a guilty verdict.

## II.    The District Court's Decision on the Motion for a New Trial

Following his conviction, D'Amelio filed a motion for a judgment of acquittal or, in the alternative, a new trial pursuant to Fed. R. Crim. P. 29 and 33.  D'Amelio reasserted his argument that, by charging the jury that the interstate commerce element of the offense could be satisfied by use of either the telephone or Internet, the district court constructively amended the indictment.

The district court denied D'Amelio's motion for a judgment of acquittal but reversed its earlier decision on whether the jury instructions constituted a constructive amendment to the

5

indictment, and it granted his motion for a new trial. *United States v. D'Amelio*, 636 F. Supp. 2d 234 (S.D.N.Y. 2009). The court framed the issue as follows: if the charging terms in the indictment included the "to wit" clause, then the indictment was constructively amended because the jury instructions broadened the possible bases for conviction beyond that specifically identified in the indictment—*i.e.* using the Internet to entice a minor to engage in sexual activity. *See id.* at 240. If, on the other hand, the charging terms were limited to the generally framed statutory language regarding the use of a facility of interstate commerce, a constructive amendment would not exist because the telephone, like the Internet, is a means of interstate commerce. *See id.*

In its analysis, the district court found that the "core criminality" in this case consisted of "enticing a little girl (or a person the defendant believed was a little girl) into a position where she could become the victim of a sexual predator," and that "[a]ll the communications relied on by the [g]overnment, whether e-mails or telephone calls, took place as part of a single course of conduct." *Id.* at 243. The district court recognized that the telephone conversations would have been admitted into evidence at trial, whether the indictment had mentioned them or not, and noted that D'Amelio had not objected to their admission. *See id.*

But after analyzing the Second Circuit cases offered by both the government and D'Amelio, the district court determined that the indictment—"which charges the crime in narrow and specific terms rather than in broad general ones—was constructively amended by the [g]overnment's argument and by the [jury] charge," *id.* at 245, and that the jury instructions "so altered an essential element of the charge that it is not certain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment," *id.* The district court

6

reached its conclusion "reluctantly," acknowledging that the case law was not on "'all fours' with the cases in which constructive amendments were found." *Id.* at 245-46. The court added that it might have agreed with the government if it was "writing on a blank slate. . . . However, the Supreme Court and the Second Circuit have spoken, and this Court is their handmaiden. In a case where the indictment was, at the [g]overnment's behest, not 'generally framed,' [the court has] no choice but to follow their lead and confess error." *Id.* at 246.

## DISCUSSION

On this appeal, we consider whether it violated the Fifth Amendment Grand Jury Clause to allow the petit jury to find D'Amelio guilty of attempted enticement of a minor based on his use of either the telephone or the Internet when a "to wit" clause in his indictment specified only the latter means of interstate commerce. The answer depends on whether the circumstances here demonstrate a constructive amendment of the indictment or a mere variance in proof. We make this determination *de novo*. *See United States v. McCourty*, 562 F.3d 458, 469 (2d Cir. 2009). For the reasons stated herein, we find at most a variance in proof.

To prevail on a constructive amendment claim, a defendant must demonstrate that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988) (internal quotation marks omitted) (emphasis added). In *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), the

7

Supreme Court restated the "two constitutional requirements for an indictment: 'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Id.* at 108 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974) (alternation in original)). While this Circuit views constructive amendment as a *per se* violation of the Grand Jury Clause requiring reversal,[2] it has "'consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial.'" *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (emphasis added in *Rigas*) (quoting *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992)).

By contrast, "[a] variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003) (internal quotation marks omitted). A variance in proof rises to a constitutional violation only if it infringes on the notice and double jeopardy protections of an indictment. *See United States v. D'Anna*, 450 F.2d 1201, 1204 (2d Cir. 1971).

As this discussion indicates, the analysis of a constructive amendment and the analysis of a variance in proof differ to an extent, but the constitutional concerns underlying both are similar.

---

[2] On appeal, the government points to Supreme Court cases holding that most constitutional errors, including indictment defects, are subject to harmless- and plain-error review, *see, e.g.*, *United States v. Cotton*, 535 U.S. 625, 629-31 (2002), and argues that a constructive amendment determination should also be subject to such analysis. Because we hold that there was no constructive amendment of the indictment in this case, we do not address this argument.

The case law analyzing each issue, therefore, is instructive to our consideration of the parties' constructive amendment arguments.

On appeal, the government asserts that the deviation between the text of the indictment and jury instructions did not affect the "core of criminality" proven at trial nor did it modify an "essential element" of the crime; at most, the deviation between the indictment and proof constituted a non-prejudicial variance[3] rather than a constructive amendment. It, for these reasons, contends that this Court's precedent compels reversal of the district court's decision.

D'Amelio counters that the district court properly concluded that the "to wit" clause in the indictment, which identified only the Internet as a facility of interstate commerce used to commit the crime, was constructively amended by the jury instructions, which listed both the Internet *and* telephone as facilities of interstate commerce. He claims that the indictment specifically limited the conduct that constituted the "core of criminality" and that the jury instructions expanded the basis for conviction beyond the specific conduct charged. We disagree.

The "core of criminality" of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview. *See generally Martin v. Kassulke*, 970 F.2d 1539, 1543 (6th Cir. 1992) (identifying the relevant question in

---

[3] D'Amelio does not argue before this Court that the deviation constituted a prejudicial variance. In a footnote in his brief, however, he claims that he suffered prejudice as a result of certain of his telephone calls with "Mary" being introduced into evidence. He makes this argument in the context of discussing whether a defendant has to show prejudice to obtain reversal of the judgment if the indictment has been constructively amended, a question we need not answer on this appeal as explained *supra* at n.2. In any event, D'Amelio's prejudice argument is meritless. The government disclosed its intent to offer evidence of the telephone calls some eighteen months before trial. Thus, D'Amelio was in no way hampered in preparing his defense. Further, for reasons explained *infra*, D'Amelio is not at risk of double jeopardy.

distinguishing constructive amendment from a mere variance in proof as whether the jury was presented with "two alternative crimes or merely two alternative methods by which the one [charged] crime . . . could have been committed"). While the case law does not define "core of criminality," it describes the phrase in relation to the crime at issue. For example, in *United States v. Danielson*, 199 F.3d 666 (2d Cir. 1999), the defendant, a convicted felon, was charged with knowing possession of ammunition, in violation of 18 U.S.C. § 922(g). The indictment provided that the defendant "unlawfully, wilfully, and knowingly did possess ammunition in and affecting commerce, and did receive ammunition which had been shipped and transported in interstate and foreign commerce, *to wit, 7 rounds of .45 calibre ammunition*." *Id.* at 668 (internal quotation marks omitted). The judge charged the jury that in determining whether the defendant possessed ammunition that traveled in interstate commerce, it could consider the statutory definition of "ammunition," which included component parts of a round. Defense counsel objected that the jury charge impermissibly broadened the indictment from its more limited "to wit" clause. On appeal, this Court rejected the defendant's constructive amendment argument, holding that "[t]he essential element of the offense charged was that [the defendant] possessed ammunition that had traveled in interstate commerce, not the precise nature of that ammunition." *Id.* at 670. The Court concluded: "Whether the government proved that shells or entire rounds had so traveled, there is no doubt that [the defendant] had notice of the 'core of criminality' to be proven at trial and that he was convicted of the offense charged in the indictment." *Id.*

D'Amelio argues that if the government defines the "core of criminality" narrowly in the indictment when it could otherwise define it generally, a constructive amendment occurs when

10

the proof at trial is different from the narrower allegations in the indictment. As related to this case, the argument goes, the indictment could have stated merely that D'Amelio used facilities of interstate commerce to entice a minor, period; instead the indictment included the "to wit" clause, and the grand jury chose to identify only the Internet as the facility of interstate commerce by which D'Amelio communicated with the minor. While this argument has some superficial appeal, it is ultimately unavailing.

D'Amelio's argument rests heavily on *Stirone v. United States*, 361 U.S. 212 (1960). In *Stirone*, the defendant was indicted for (and convicted of) unlawfully interfering with interstate commerce in violation of the Hobbs Act. The indictment charged the defendant with obstructing—by extortion and threats of labor unrest—shipments of sand that traveled in interstate commerce into Pennsylvania where the sand was being used in making concrete that was then going to be used to construct a steel mill. *Id.* at 213-14. At trial, the government introduced evidence related to the shipments of sand and the movement of those shipments in interstate commerce. The court, however, permitted the government also to introduce evidence that defendant's actions in hindering sand shipments had affected prospective steel shipments from the not-yet-constructed steel mill in Pennsylvania to other states, including Michigan and Kentucky. *Id.* at 214. Consistent with the indictment, the court instructed the jury that defendant's "guilt could be rested . . . on a finding that . . . sand used to make the concrete had been shipped from another state into Pennsylvania." *Id.* (internal quotation marks omitted). But the trial court also instructed the jury that a finding of guilt could rest on the jury's determination that "concrete was used for constructing a mill which would manufacture articles of steel to be shipped in interstate commerce from Pennsylvania into other States." *Id.* (internal quotation

11

marks omitted).  The Supreme Court noted that nothing in the indictment could be read "as charging interference with movements of steel from Pennsylvania to other States."  *Id.* at 217.  This new factual basis for conviction was neither "trivial, useless, nor innocuous."  *Id.*  On that ground, the Court reversed defendant's conviction, concluding that he may have been "convicted on a charge the grand jury never made against him."  *Id.* at 219.

The Court's analysis of what was in essence a constructive amendment issue[4] in *Stirone*, however, does not control the outcome in this case.  There is a critical difference between the procedural and substantive facts in *Stirone* and those presented here.  The distinction lies in whether the jury convicted based "on a complex of facts distinctly different from that which the grand jury set forth in the indictment," *Jackson v. United States*, 359 F.2d 260, 263 (D.C. Cir. 1966) (describing *Stirone*), or whether the indictment charged a single set of discrete facts from which the government's proof was at most a non-prejudicial variance, *United States v. Knuckles*, 581 F.2d 305, 312 (2d Cir. 1978).  If the latter, this Court has generally concluded that the indictment provides sufficient notice to defendants of the charge(s) lodged against them.  *See, e.g.*, *United States v. Soerbotten*, 398 F. App'x 686, 688 (2d Cir. 2010) (summary order); *United States v. Sindona*, 636 F.2d 792, 798-99 (2d Cir. 1980); *Knuckles*, 581 F.2d at 312.

---

[4] The *Stirone* Court did not phrase its analysis in such terms.  Nonetheless, it referred to the government proof and jury charge regarding the steel mill shipments as a "variance" that "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury."  *Stirone*, 361 U.S. at 217.  The Court observed: "Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same."  *Id.*  However the Court characterized the issue in *Stirone*, variance cases and constructive amendment cases are both instructive on whether there has been a violation of the Grand Jury Clause.

In determining whether this case involves proof at trial of a distinctly different complex set of uncharged facts, which under *Stirone* would require reversal of the conviction, or a single set of discrete facts consistent with the charge in the indictment, we are guided by a comparison between two of our cases:  *United States v. Knuckles*, 581 F.2d 305 (2d Cir. 1978), and *United States v. Wozniak*, 126 F.3d 105 (2d Cir. 1997).  In *Knuckles*, the defendants had been charged with distribution of heroin, but at trial, the evidence showed that the substance distributed was cocaine.  581 F.2d at 308-09.  The trial court charged the jury that it could convict if it found either distribution of heroin or cocaine.  In affirming the conviction, this Court held that the defendants were "sufficiently apprised of the charges laid against them in . . . the indictment." *Id.* at 311.  Equally important to this Court's holding that there was no prejudicial variance in the government's proof was the fact that a "single set of facts" was involved—the "tabling operation for a controlled substance at a particular time and place.  The operative facts were the same whether the controlled substance was heroin or cocaine." *Id.* at 312.  Since "the time, place, people, and object proved at trial are in all respects those alleged in . . . the indictment," we held that the defendants had notice, they could defend against the charge, and they would not be subject to double jeopardy. *Id.* at 311-12.  We specifically rejected the argument that *Stirone*'s holding controlled the outcome.  In particular, we pointed out that in *Stirone* the Court was troubled by the fact the conviction was based "on a set of facts wholly unrelated to the facts charged," *id.* at 312, which was a marked distinction from what we characterized as the "single set of facts" present in Knuckles's case,[5] *id.*

---

[5] We also have had occasion to reject *Stirone* as standing for a "broad prohibition of any variance between pleading and proof."  *See Sindona*, 636 F.2d at 798.   We have "consistently construed *Stirone* narrowly." *Id.*

13

In contradistinction to *Knuckles* is *Wozniak*, in which the defendant was charged with conspiracy to possess with intent to distribute cocaine and methamphetamines as part of a seventy-six-count superseding indictment involving eight individuals. 126 F.3d at 106. The evidence at trial connecting the defendant to the drug ring showed only his *use* of cocaine and marijuana and his possession with intent to distribute marijuana, but not possession with intent to distribute cocaine and methamphetamines as charged in the indictment. *Id.* at 107-08. The district court instructed the jury that it did "not matter that a specific count of the indictment charges that a specific controlled substance was involved in that count, and the evidence indicates that, in fact, a different controlled substance was involved," and that as long as the jury found that some controlled substance was involved, that fact would be sufficient to convict. *Id.* at 108-09 (internal quotation marks omitted). This Court, while carefully limiting its holding "to the specific circumstances in this case," *id.* at 109, agreed with the defendant that he "well may have been surprised by the introduction of evidence of narcotics other than what was alleged in the indictment," *id.* at 111, and had he known that evidence of the non-charged substance would satisfactorily prove the charges, he might have "chosen a different trial strategy," *id.* at 110. On that basis, we held that the indictment had been constructively amended.

In arriving at this conclusion, the *Wozniak* Court spent a good deal of time distinguishing *Knuckles*. It concluded that *Knuckles* "dealt with a specific transaction occurring on a specific date. Therefore, the defendants were aware of the 'core of criminality' which was to be proven at trial. The exact controlled substance did not affect the government's evidence or the ability to defend." *Id.* at 111. By contrast, we observed in *Wozniak* that the case did not involve a "single

14

set of operative facts that would alert Wozniak that at trial he would face marijuana evidence as well as whatever cocaine evidence the government possessed." *Id.* Rather, Wozniak's co-defendants were charged in a separate grand jury indictment with conspiring to possess with intent to distribute marijuana, a charge that the government opted not to pursue against Wozniak.[6] *Id.* at 109, 111. As a result, the *Wozniak* court held that *Knuckles* did not control and that the jury instruction constructively amended the indictment in violation of defendant's Fifth Amendment rights. *See id.* at 111.

Building on the comparison between *Knuckles* and *Wozniak* and how this Court has distinguished *Stirone* to date, we conclude that *Stirone* does not control the outcome here. As was the case in *Wozniak*, in *Stirone*, the defendant "well may have been surprised by the introduction," *Wozniak*, 126 F.3d at 111, of different and unrelated proof adduced at trial. In *Stirone*, the differences between the indictment and proof were extreme. On the one hand, the indictment charged interference with the importation of actual, past sand shipments into Pennsylvania. *Stirone*, 361 U.S. at 213-214. The variance in proof at trial, however, included proof of interference with the exportation of future steel shipments from "a nonexistent steel mill" out of Pennsylvania into other states. *Id.* at 219. Although not phrased in these terms, the "core of criminality" in *Stirone* was clearly the interference with shipments of materials used in the mixing of concrete (*e.g.*, sand) wrought by the defendant's threats of labor unrest. *Id.* at 213-

---

[6] Further precluding the government from substituting a marijuana conspiracy for the charged cocaine and methamphetamine conspiracy is the fact that the latter conspiracy was charged in order to trigger mandatory minimum sentences that would not have applied to the marijuana scheme. *See United States v. Gonzalez*, 420 F.3d 111, 121-31 (2d Cir. 2005) (holding that drug types and quantities triggering statutory minimums are elements of the crime that must be pleaded and proved).

15

14 (citing the indictment). This was the basis for federal jurisdiction under the Hobbs Act as charged by the grand jury. The proof the government introduced and the jury considered regarding speculative steel shipments out of the plant that was yet to be built fell completely outside that core of criminality charged by the grand jury. Moreover, the government's proof and the jury's instructions supported a theory of effect on interstate commerce under the Hobbs Act that was distinctly different from the one charged. While the *Stirone* Court said "when one particular kind of commerce is charged to have been burdened[,] a conviction must rest on that charge and not another," 361 U.S. at 218, the Court cabined that pronouncement by noting that the "fatal error" was the entirely speculative inquiry "whether the grand jury would have included in its indictment a charge that commerce in steel from a nonexistent steel mill had been interfered with," *id.* at 219. As subsequent circuit case law has interpreted *Stirone*'s holding, *see, e.g.*, *Knuckles*, 581 F.2d at 312, *Stirone*'s outcome would have been different if, in addition to interference with shipments of sand, the additional proof at defendant's trial had included interference with gravel and cement shipments, *i.e.*, past shipments of other materials necessary for the victim's production of ready-mixed concrete. As in *Knuckles*, such a variance would not have altered the core of criminality in *Stirone*.

*Stirone*, therefore, is distinguishable from the case before us because the distinctly different sets of facts and theories presented and charged to the jury in *Stirone* that prompted the Court's reversal are not present here. In the case before us, the district court found that the charged offense took place "as part of a single course of conduct." *D'Amelio*, 636 F. Supp. 2d at 243. That course of conduct by D'Amelio took place within the discrete time period of August

16

2004 through September 2004. The course of conduct had a single, ultimate purpose (its "core of criminality")—to entice "Mary," whom D'Amelio believed was 12 years old, "into a position where she could become the victim of a sexual predator." *Id.* The district court implicitly recognized, and we agree, that the "core of criminality" for this crime did not encompass a specific facility and a specific means of interstate commerce employed by D'Amelio in connection with the crime. The court aptly noted that all of the communications relied upon by the government, "whether e-mails or telephone calls, took place as part of a single course of conduct—one designed, under the [g]overnment's theory of the case, to gain the trust of [Mary] and convince her to meet [D'Amelio] in person, so he could lure her into a secluded place for the purpose of engaging in sexual conduct." *Id.* Moreover, there is no evidence, much less any argument, that D'Amelio was "surprised" by evidence of telephone conversations introduced against him. While not dispositive, this is further indication that the phone calls were encompassed in the "core of criminality" charged in the indictment and could be considered as proof of use of "any facility or means of interstate . . . commerce." 18 U.S.C. § 2422(b); *see Patino*, 962 F.2d at 265-66.

Having concluded that the indictment gave D'Amelio sufficient notice of the core criminal conduct for which he was charged, we now address whether the variance in proof "altered . . . [or] modif[ied] essential elements of the offense charged" to the point there is a "substantial likelihood that [D'Amelio] may have been convicted of an offense other than that charged in the indictment." *Mollica*, 849 F.2d at 729 (internal quotation marks omitted).

17

The government's proof at trial did not modify an "essential element" of the alleged crime. The essential element at issue is D'Amelio's use of a "facility or means of interstate . . . commerce," 18 U.S.C. § 2422(b), not the particular means that were used. Neither the indictment nor proof at trial showed that D'Amelio committed this crime by means of, for example, use of force, which would have modified an "essential element" of the crime.[7] Whether D'Amelio used the Internet or a telephone makes no difference under the relevant statute, *see id.*, and "affect[ed] neither the [g]overnment's case nor the sentence imposed." *Knuckles*, 581 F.2d at 311.

In so concluding, we draw a parallel with other constructive amendment cases where courts have held that the *specific means* used by a defendant to effect his or her crime does not constitute an "essential element" of the offense and, therefore, proof of specific means apart from those charged in the indictment does not constructively amend the indictment. In *United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006), the defendants were charged with wire fraud and conspiracy to commit wire fraud. The indictment included some preliminary, generally framed clauses that tracked the language of the charging statute, followed by a "to wit" clause alleging a specific fraudulent transaction. *See id.* at 140 n.10. The specific wire transfer mentioned in the "to wit" clause was not proven at trial, but others were. *Id.* at 140. This Court held the indictment was not constructively amended by the proof at trial, because "the evidence at trial concerned the same elaborate scheme to defraud investors as was described in the indictment."

---

[7] The government argues that the interstate commerce element is the premise for federal jurisdiction, and not an "essential element" of the offense, by citing other statutes that contain a "means and facility of interstate commerce" element.

18

*Id.* at 140-41. The Court emphasized that the starting and ending dates of the conspiracy, stated in the indictment, corresponded to the conspiracy proven at trial, and that the evidence demonstrated that defendants engaged in the fraudulent scheme described in the indictment. *Id.* at 140. It held there was no constructive amendment. *Id.* at 140-41. There was instead a variance which was not fatal to the prosecution because the "description of the scheme in the indictment" had "put defendants on notice that the prosecution aimed to prove that defendants conspired in the Southern District of New York to fraudulently induce investors to transfer money by wire to defendants" during the relevant time period. *Id.* at 141. In other words, the essential elements of the wire fraud crime involved wire transfers, not specific wire transfers. *See id.* at 142-43; *see also Patino*, 962 F.2d at 266 (citing, with approval, *United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990), in which the Sixth Circuit upheld an 18 U.S.C. § 924(c) conviction where the indictment charged use of a .357 Magnum but the proof showed use of a shotgun, because the specific type of firearm used by the conspirator was not an essential element of the crime); *Danielson*, 199 F.3d at 670.

In this case, the essential elements of the enticement crime involved communications conveyed by facilities of interstate commerce, not the specific interstate commerce facilities used to achieve these communications. *See* 18 U.S.C. § 2422(b). Indeed, because enticement frequently depends on a sexual predator's securing a victim's trust, multiple communications are the norm rather than the exception. Thus, the indictment charged that the enticement occurred over a period of time defined by dates specified in the indictment. And well in advance of trial, the government provided the defendant with notice of the communications on which it would

rely to prove the charged crime at trial. Thus, although the "to wit" clause in D'Amelio's indictment specifies use of the Internet, the clause preceding that language is generally framed and references the use of "a facility and means of interstate commerce" in unspecified terms. Because the telephone is a "facility and means of interstate commerce," *see, e.g.*, *United States v. Giordano*, 442 F.3d 30, 39 (2d Cir. 2006), it was not fatal to D'Amelio's conviction that the jury was instructed that both the telephone and Internet qualify as facilities of interstate commerce. We conclude, therefore, that this "essential element" of the crime was the use of a facility or means of interstate commerce, not the particular means used. In sum, where the indictment charged a single course of conduct and the deviation from the interstate commerce facilities alleged in the "to wit" clause did not permit conviction for a functionally different crime, it cannot be said that the deviation in evidence "broaden[ed] the possible basis for conviction beyond that contained in the indictment." *Patino*, 962 F.2d at 266.

Having concluded that D'Amelio received constitutional notice, we also hold that D'Amelio will not suffer any risk of double jeopardy. The indictment named "[D'Amelio], the date and place of the crime, and the crime alleged. Read in conjunction with the charge to the jury, there can be no doubt that [D'Amelio has] been once in jeopardy," *Knuckles*, 581 F.2d at 311-12, for participation in a scheme to entice a person under eighteen, via a facility of interstate commerce, in the Southern District of New York, from August to September 2004.

The cases the district court relied upon to buttress its conclusion that the indictment was constructively amended (and relied upon by D'Amelio on appeal) are distinguishable because in those cases either the deviation between the indictment and the proof at trial was significant or

20

the jury convicted the defendant of a functionally different crime. *See, e.g.*, *United States v. Hassan*, 578 F.3d 108, 133-34 (2d Cir. 2008) (finding jury charges erroneous because it permitted jury to convict defendant of an offense different from the one charged in the indictment and carrying different penalties); *United States v. Milstein*, 401 F.3d 53, 64-66 (2d Cir. 2005) (indictment charged defendant with distributing misbranded drugs in interstate commerce with fraudulent intent; at trial, government presented evidence establishing guilt based on completely different theory of misbranding; Court held that defendant was not put on notice that the government would introduce evidence supporting a different method of misbranding and held that the indictment was constructively amended).

In light of the above, we hold that the government provided D'Amelio with notice of the "core of criminality" of the charge to be proven at trial—attempted enticement of a minor—and that the district court's instructions to the jury that both the telephone and Internet were facilities of interstate commerce did not "so alter[] an essential element of the charge" as to amount to a constructive amendment. *Salmonese*, 352 F.3d at 620 (internal quotation marks and citation omitted). Furthermore, we hold that the allegations in the indictment and the proof and jury instructions "substantially correspond" with each other, as they involve a single course of conduct. *Danielson*, 199 F.3d at 670 (internal quotation marks omitted). It therefore follows that D'Amelio was convicted of conduct that was the subject of the grand jury's indictment, and there was no constructive amendment of the indictment. *See Salmonese*, 352 F.3d at 620-21.

As a final observation, we agree with the district court that this particular litigation could have been avoided had the government been more careful in wording its indictment.

**CONCLUSION**

Because we hold that there was no constructive amendment of the indictment in this case, we reverse the district court's decision and remand the case for further proceedings consistent with this opinion.