14-2355-cr
*United States v. Lisyansky*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2015

(Argued:  November 2, 2015          Decided: November 30, 2015)

Docket No. 14-2355-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

- v. -

BORIS LISYANSKY, AKA SEALED DEFENDANT 1, [*]

*Defendant-Appellant.*

_____

Before:

HALL and LOHIER, *Circuit Judges*, and REISS, *Chief Judge*.[**]

Defendant-Appellant seeks review of his conviction and sentence, following a jury trial, for conspiracy to commit murder-for-hire and substantive murder-for-hire, in violation of 18 U.S.C. §§ 1958, 2.  On appeal, he argues that: (1) the district court erred by increasing his offense level based on a misapplication of the United States Sentencing Guidelines Manual ("U.S.S.G.") § 2E1.4; (2) the evidence was insufficient as a matter of law to convict him of murder-for-hire; and (3) the district court's failure to instruct the jury on the definition of "murder" under New York Penal Law constituted a constructive amendment to the indictment. Because all of these arguments are without merit, we AFFIRM the judgment of the district court.  We write to confirm that the district court properly applied U.S.S.G. § 2E1.4, cmt. n.1 to calculate an offense level based on U.S.S.G. § 2A1.5 for a defendant who has been convicted of violating 18 U.S.C. § 1958 under circumstances where the underlying conduct violated state law.

AFFIRMED.

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

[**] The Honorable Christina Reiss, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

BETH M. FARBER, Harris, O'Brien, St. Laurent & Chaudhry LLP, New York,, NY, *for Defendant-Appellant.*

ALEXANDER J. WILSON (Karl Metzner, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, NY, *for Appellee.*

PER CURIAM:

Following a trial by jury Defendant-Appellant Boris Lisyansky was convicted of conspiracy to commit murder-for-hire and the substantive offense of murder-for-hire, in violation of 18 U.S.C. §§ 1958, 2. The district court sentenced Lisyansky to consecutive statutory maximum sentences of ten years on each count. On appeal, Lisyansky argues that: (1) the district court erred when it used U.S.S.G § 2E1.4, cmt. n.1 to calculate an offense level based on United States Sentencing Guidelines ("U.S.S.G.") § 2A1.5—reasoning that Lisyansky had been convicted of § 1958 and the underlying conduct violated state law— which resulted in a baseline offense level of 37 rather than 32; (2) the evidence supporting his convictions was insufficient as a matter of law; and (3) the district court constructively amended the indictment by not instructing the jury on the definition of "murder" under New York law. For the following reasons, the judgment of the district court is AFFIRMED.

We write here specifically to join the First, Eighth, and Ninth Circuits in affirming that the district court was correct to use U.S.S.G. § 2E1.4, cmt. n.1 to calculate an offense level based on U.S.S.G. § 2A1.5, rather than § 2E1.4 itself, for a defendant who has been convicted of § 1958 where the underlying conduct violated state law.

## BACKGROUND

Lisyansky worked at a restaurant, in Queens, New York, and the intended victims of the murder-for-hire plot were a father and son who owned a rival restaurant. It is undisputed that Lisyansky hired the only witness against him, Jesus Rosa, to commit a crime. The sole issue at trial was whether Rosa was hired to commit robbery or to commit murder.

Rosa has a long history of mental illness and substance abuse. In the months leading up to the incidents in question, he was using heroin, crack cocaine, and prescription pills, and was having hallucinations. Rosa was hospitalized twice in May, 2010 for a combination of drug use and mental illness. Rosa's second hospitalization occurred after he had been found in a subway station threatening to jump onto the tracks, although at trial he could not remember the incident. He also could not clearly recall where he went to live after being discharged from the hospital, just two weeks prior to the events in question.

Rosa's recollection of the events underlying the murder-for-hire plot, by contrast, was quite clear. He testified that when Lisyansky asked him to commit murder-for-hire in exchange for $24,000, he agreed to do so, although his plan was merely a ruse in order to receive payment of half of the money and flee before shooting anyone.

Lisyansky and Rosa were driven to their victims' restaurant on May 26, 2010, by Lisyansky's co-defendant Jayson Vasquez-Soto. Lisyansky had arranged a meeting with the father and son, whom he intended to have killed. Rosa refused to enter the restaurant, however, saying there were too many witnesses. At that point, Lisyansky told Rosa that if they did not carry out the hit, the people who had ordered the murders would kill both of

them. Rosa then decided to go forward with the murders. There was no evidence that Lisyansky withdrew the prior offer of a pecuniary benefit at that time, or any other.

The trio returned to the restaurant by car the next day, and Lisyansky entered to meet with the father and son. Lisyansky met with the son, but the father had yet to arrive. Upon receiving a confirmation call from Lisyansky, Rosa entered the restaurant, brandished a gun, told everyone to get down, and asked the son for a watch he was wearing. At no time did Rosa ask for, or take, anything of value from the restaurant other than the watch, which Lisyansky had told him was needed as proof of the murders. The son handed Rosa his wallet, which was full of cash, and Rosa cast it aside. Rosa lost his nerve and shot the son in the leg. As Rosa exited the restaurant, the father arrived, saw the commotion, and started chasing Rosa. Rosa fired shots above the father's head to scare him off. He then escaped with Vasquez-Soto in the getaway car.

Rosa and Vasquez-Soto later cleaned and hid the getaway car, and Rosa returned the gun he had used to Lisyansky. Lisyansky put Rosa up in a hotel for a time and gave him $6,000. Rosa was eventually arrested on other charges, confessed to his involvement with Lisyansky, agreed to testify for the Government, and pleaded guilty to murder-for-hire.

The indictment charged Lisyansky with use of an instrument of interstate commerce (a cell phone), "with the intent that a murder be committed in violation of the law of New York State, to wit, New York State Penal Law Section 125.25, as consideration for the receipt of . . . anything of pecuniary value." J.A. at 18. At trial, the district court read the jury instructions that the parties had agreed upon. Those instructions did not include the

4

definition of "murder" found in New York Penal Law § 125.25. At sentencing, over defense counsel's objection, the district court was guided by U.S.S.G. § 2E1.4 ("Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire"), cmt. n.1—which instructs the court that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used"—to calculate Lisyansky's offense level based on U.S.S.G. § 2A1.5 ("Conspiracy or Solicitation to Commit Murder"), because the underlying conduct violated state law. The baseline offense level was thus 37, rather than 32. Lisyansky filed the instant appeal from the final judgment.

## DISCUSSION

### I. Application of the United States Sentencing Guidelines

Lisyansky argues that the district court improperly computed his offense level based on U.S.S.G. § 2A1.5, "Conspiracy or Solicitation to Commit Murder," rather than U.S.S.G. § 2E1.4, "Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire." We "review the district court's interpretation of the Guidelines *de novo*, and its findings of fact relevant to the Guidelines application for clear error." *United States v. Broxmeyer*, 699 F. 3d 265, 281 (2d Cir. 2012).

While it is true that § 2E1.4 is the Guidelines provision specifically indexed to 18 U.S.C. § 1958 (Lisyansky's crime of conviction) in Appendix A to the United States Sentencing Guidelines Manual, the Application Notes that accompany § 2E1.4 specifically instruct the district court to use "the offense level corresponding to the most analogous

5

federal offense" in the event that "the underlying conduct violates state law" and the offense level is greater than 32 U.S.S.G. § 2E1.4 and cmt. n.1.

As the district court pointed out, in order to accept Lisyansky's argument that "the use of the cross-reference is an incorrect application of the guidelines[,]" Appellant's Br. at 52, we would be "require[d] [to] declare that 2A1.5 is inapplicable to 2E1.4 simply because it is inherent in 2E1.4." J.A. at 490. And like the district court, we "can't accept that argument." *Id.* First, contrary's to Lisyansky's assertions, in 2004, § 2A1.5 was amended as part of an effort to increase the penalty for homicide offenses; the base offense level for conspiracy or solicitation to commit murder was increased from 28 to 33. *See* United States Sentencing Commission, *Amendments to the Sentencing Guidelines* 6–7 (May 10, 2004), http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20040430_RF_Amendments.pdf. After the 2004 amendments, the offense level for solicitation to commit murder involving the exchange of money increased to 37 under § 2A1.5, which set forth the new base offense level of 33, and added the 4-level enhancement for the exchange of money. Section 2E1.4, by contrast, was unchanged. Section 2E1.4 cmt. n.1 ensures the base offense level for violation of § 1958 is at least 32, and that the sentencing of the underlying conduct tracks § 2A1.5—and other related Guidelines sections—by incorporating the offense level applicable to the underlying unlawful conduct. Second, as the Government argued below, a person can be convicted of violating § 1958 without conspiring to commit or soliciting murder or otherwise violating

6

state law, and thus § 2E1.4 is not rendered superfluous by § 2A1.5 or Application Note 1 to § 2E1.4.

Both the First and Eighth Circuits have affirmed the use of this cross-reference prior to the last update of the April 30, 2015 amendment to the Guidelines. *See United States v. Smith*, 755 F.3d 645, 647 (8th Cir. 2014); *United States v. Dotson*, 570 F.3d 1067, 1069-70 (8th Cir. 2009); *United States v. Vasco*, 564 F.3d 12, 22-23 (1st Cir. 2009). The Ninth Circuit also recently directed the use of the same cross-reference in an analogous situation. *See United States v. Temkin*, 797 F.3d 682, 693-95 (9th Cir. 2015). Moreover, albeit in an unpublished decision, this court has affirmed the use of the same cross-reference to address a different Guidelines provision. *See United States v. Dan*, 205 F.3d 1325, at *2 (2d Cir. 1999) (unpublished table opinion). In *Dan*, the court affirmed the district court's use of § 2E1.4 cmt. n.1 to calculate the baseline offense level under § 2A1.1 for a defendant who was convicted of violating § 1958, where the underlying offense violated state law, and 18 U.S.C. § 1111(a) ("the unlawful killing of a human being with malice aforethought") was the most analogous federal offense. *Id.* at *2–3. The district court neither misinterpreted nor misapplied the Guidelines in calculating Lisyansky's sentence.

Lisyansky's remaining arguments are more summarily addressed given our existing precedent.

## II. Sufficiency of the Evidence

Lisyansky contends that the testimony of his co-conspirator, Rosa, was inherently unreliable, that Rosa, who has a history of mental illness, lacked the mental capacity to form

7

the requisite intent to join the conspiracy, and that there was no evidence of an agreement to commit murder in exchange for anything of pecuniary value.

"A defendant challenging the sufficiency of the evidence bears a heavy burden[.]" *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). A jury verdict must be upheld if "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (internal quotation marks omitted). In considering the sufficiency of the evidence supporting a guilty verdict, the evidence must be viewed in the light most favorable to the Government. *See United States v. Temple*, 447 F.3d 130, 136–37 (2d Cir. 2006). Sufficiency must be assessed with respect "to the totality of the government's case and not to each element, as each fact may gain color from others." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). Lisyansky has failed to meet this "heavy burden" of demonstrating insufficiency of the evidence supporting his conviction. *See Kozeny*, 667 F.3d at 139.

Lisyansky principally relies on *United States v. Chancey*, 715 F.2d 543 (11th Cir. 1983), to support the proposition that an appellate court should reverse a conviction when the "critical witness was . . . inherently unreliable[.]" Appellant's Br. at 28. In *Chancey*, the sole witness's testimony defied logic. *Id.* at 546 (observing that a sufficiency "problem . . . arises when the testimony credited by the jury is so inherently incredible, so contrary to the teachings of basic human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it beyond a reasonable doubt"). Lisyansky has not identified any material aspects of Rosa's testimony that defy logic, and indeed the facts

8

presented at trial support the theory promoted by the prosecution—that Rosa was hired to commit murder, not robbery. As the district court instructed, the members of the jury are the "sole judges of credibility of each witness," J.A. at 415, and the record demonstrates that the jury was well-aware of Rosa's mental-health and drug-use history. There is no basis for us, on appeal, to re-examine Rosa's credibility.

Lisyansky's contention that Rosa lacked the mental capacity to join the conspiracy and, that, there was therefore no evidence of a conspiracy presented at trial, is also misplaced because a person with a history of mental illness, in many circumstances, can be capable of joining a conspiracy. The case law Lisyansky cites in support of the position he advances, *United States v. Phillips*, 630 F.2d 1138 (6th Cir. 1980), is distinguishable from this case. In *Phillips*, the only witness to the formation of the conspiracy was the alleged co-conspirator who testified that she did not remember the relevant events. *Id.* at 1142. She was found incompetent to stand trial. *Id.* at 1141. Rosa, by contrast, testified in detail about the relevant events at issue, and he was never determined to be incompetent. Nor was there any expert testimony in this case to the effect that Rosa was mentally incapable of standing trial or of forming the specific intent required to join a conspiracy. Rather, the evidence at trial—Rosas's testimony and hospital records—when viewed in the light most favorable to the Government, *Temple*, 447 F.3d at 136–37, suggests that he struggled with mental illness and drug use in the months leading up to the formation of the conspiracy but remained sober and relatively lucid during the period when the conspiracy was formed and operated.

9

Lisyansky argues further that there was insufficient evidence to support his convictions because Rosa testified that he agreed to carry out the murders for fear of reprisal, not because Lisyansky agreed to pay him $24,000. This court, however, has held that "[w]hen the defendant is the solicitor of the murder-for-hire, it is the defendant's intent that controls." *United States v. Hardwick*, 523 F.3d 94, 100 (2d Cir. 2008) (citing *United States v. Richeson*, 338 F.3d 653, 656 (7th Cir. 2003) ("'The federal murder-for-hire statute requires the government to prove that the *accused* intended for a murder to be committed' as consideration for something of pecuniary value." (emphasis added))). Rosa testified that he "agreed" to "kill them" for "$24,000." J.A. at 87. Whether Rosa had the subjective intent to commit the murders is not our inquiry in assessing the Government's proof of the substantive murder-for-hire charge.

There is also no basis to vacate the conspiracy conviction on the grounds that Rosa did not agree to commit murder in exchange for something of pecuniary value. There was no evidence that Lisyansky withdrew the offer of a pecuniary benefit at any time or that Rosa was willing to commit the murders without receiving payment. To the contrary, Rosa remained concerned with getting paid by Lisyansky even after he failed to carry out the plot. Viewing this evidence in the light most favorable to the Government, and considering the totality of the circumstances, there was sufficient evidence from which the jury could conclude that Rosa agreed to commit murder-for-hire in exchange for something of pecuniary value.

## III. Constructive Amendment

Because Lisyansky raises his constructive amendment claim for the first time on appeal, we review for plain error. *United States v. Bastian*, 770 F.3d 212, 219 (2d Cir. 2014). Thus, Lisyansky must show that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights[, which in the ordinary case means it affected the outcome of the district court proceedings]; *and* (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 219-20 (emphasis added) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

"To prevail on a constructive amendment claim, a defendant must demonstrate that 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (quoting *United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988)) (emphasis in original). "Not every divergence from the terms of an indictment, however, qualifies as a constructive amendment. We have 'consistently permitted significant flexibility in proof' adduced at trial to support a defendant's conviction, 'provided that the defendant was given *notice* of the *core of criminality* to be proven' against him." *Bastian*, 770 F.3d at 220 (quoting *D'Amelio,* 683 F.3d at 417) (emphasis in original). "The 'core of criminality' of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls

outside that purview." *D'Amelio*, 683 F.3d at 418 (citing *Martin v. Kassulke*, 970 F.2d 1539, 1543 (6th Cir. 1992) (identifying the relevant question in distinguishing constructive amendment from a mere variance in proof as whether the jury was presented with "two alternative crimes or merely two alternative methods by which the one [charged] crime . . . could have been committed")).

Lisyansky contends that the district court constructively amended the indictment by failing to instruct the jury on the definition of murder found in N.Y. Penal Law § 125.25, the state law underlying the murder-for-hire charges in the indictment. But Lisyansky has failed to show that the district court's instruction altered the "core of criminality" of the charged offenses. The instruction given was in accordance with a standard modern jury instruction to which Lisyansky not only failed to object but agreed should be given. *See* Leonard B. Sand et al., *Modern Federal Jury Instructions*, Instruction 60-16 (explaining that the trial court should not instruct the jury on the underlying state law elements of murder). Lisyansky's trial counsel, moreover, waived this objection by failing to object at the time of trial. *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir. 2002). Lisyansky has failed to demonstrate error, let alone plain error, in the jury instruction given by the district court.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.