*United States v. English*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of October, two thousand twenty-two.

PRESENT:
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> MYRNA PÉREZ,
>
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                            No. 21-471

CLAUDIUS ENGLISH, a.k.a. JAY BARNES, a.k.a. BRENT ENGLISH,

> *Defendant-Appellant.*[*]

_____

_____

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendant-Appellant: JOHN C. MERINGOLO, Meringolo & Associates, P.C., Brooklyn, NY.

For Appellee: NI QIAN (Michael Kim Krouse, Frank Balsamello, Danielle R. Sassoon, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul G. Gardephe, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Claudius English appeals his conviction and sentence following a jury trial in which he was found guilty of one count of conspiracy to engage in sex trafficking of minors, in violation of 18 U.S.C. § 1594 (Count One); four counts of sex trafficking of minors, in violation of 18 U.S.C. § 1591 (Counts Two, Three, Four, and Eight); three counts of attempted sex trafficking of minors below the age of fourteen, in violation of 18 U.S.C. §§ 1591 and 1594 (Counts Five, Six, and Seven); one count of kidnapping of a minor, in violation of 18 U.S.C. § 1201 (Count Nine); and one count of brandishing a firearm in furtherance of a crime of violence,

in violation of 18 U.S.C. § 924(c)(1)(A) (Count Ten). Following the jury's verdict, English moved for judgment of acquittal on Counts Five, Six, Seven, Nine, and Ten. The district court granted English's motion as to Count Ten in light of the Supreme Court's intervening decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), but denied the balance of his motion. The district court thereafter sentenced English to twenty-five years' imprisonment on each of the remaining counts, all to run concurrently. On appeal, English raises five principal challenges to his conviction and sentence, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

*First*, English argues that the trial evidence was insufficient to establish the specific-intent and interstate-commerce elements of his conviction on Count Nine for the kidnapping of Tatyana, a fourteen-year-old girl living in New Jersey. "A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). On this appeal, the critical question is whether "any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

English argues that no rational juror could have found that he had the specific intent to kidnap the victim given that he had consumed alcohol and marijuana before and during the kidnapping. Although a defendant may show that he was "too intoxicated" to form the requisite specific intent to commit a crime, that is ultimately "a question for the jury." *United States v. Crowley*, 236 F.3d 104, 111 (2d Cir. 2000). Here, while there is evidence that English consumed alcohol and marijuana before and during the kidnapping, there is no indication in the record that he consumed such a large amount that he was "too intoxicated [to] specifically . . . intend to" kidnap the victim. *Id.* English's argument is further undermined by the deliberate measures he took to restrain the victim for four hours by taking away her money and cellphone charger, raping her at gunpoint, and then confining her to the bathroom of his apartment. On this record, we cannot say that it was irrational for the jury to conclude that English had the specific intent to kidnap Tatyana.

English also argues that his communications with Shantasia, his assistant, were insufficient to establish the interstate-commerce element of kidnapping,

which requires the government to prove that English "use[d] the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of" the kidnapping. 18 U.S.C. § 1201(a). The crux of English's argument is that his communications with Shantasia were not in furtherance of the kidnapping, but were "merely descriptions" of that night's events. English's Br. at 32. But given the sequence of the communications during the kidnapping, English's representation that Shantasia "worked for" his sex-trafficking operation, App'x at 74–75, and English's decision to delete his text messages with Shantasia after the victim ran away, a rational trier of fact could have reasonably concluded that the communications were made in furtherance of the offense, thereby satisfying the jurisdictional element, *see, e.g.*, *United States v. Giordano*, 442 F.3d 30, 38 (2d Cir. 2006); *United States v. Perez*, 414 F.3d 302, 305 (2d Cir. 2005).

*Second*, English argues, for the first time on appeal, that the district court erred in not instructing the jury sua sponte on the affirmative defense of voluntary intoxication. When, as here, a putative error in the district court's jury instructions was not objected to below, we review the claim of error under the "exacting standard of plain error." *United States v. Grote*, 961 F.3d 105, 114

5

(2d Cir. 2020).   For an error to be plain, "it must be a 'clear' or 'obvious' deviation from current law that 'affected the outcome of the district court proceedings.'" *United States v. Crowley*, 318 F.3d 401, 415 (2d Cir. 2003) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).   Given the absence of evidence as to quantities of intoxicant that English consumed, we cannot conclude that the district court's decision not to give such an instruction sua sponte was a plain error.

*Third*, English challenges the sufficiency of the evidence for his convictions on Counts Five, Six, and Seven (attempted sex trafficking).   To establish liability for a crime of attempt, "the government must prove that the defendant had the intent to commit the crime and engaged in conduct amounting to a substantial step towards the commission of the crime."   *United States v. Pugh*, 945 F.3d 9, 20 (2d Cir. 2019).   For a defendant to have taken a "substantial step," he must have engaged in conduct "tended to cause that particular crime to occur," *United States v. Desposito*, 704 F.3d 221, 233 (2d Cir. 2013), conduct that was "more than 'mere preparation,' but may have stopped short of 'the last act necessary' for the actual

commission of the substantive crime," *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003) (quoting *United States v. Rosa*, 11 F.3d 315, 337 (2d Cir. 1993)).[1]

English argues that his text messages with Oliver Sohngen, a repeat customer of his sex-trafficking operation, showed nothing more than "fantasy" or at most "mere planning." English's Br. at 41–43. But the trial evidence established that English messaged Sohngen specifics about trafficking the victims, including ways to pick up the victims without getting caught, the hotel to which the victims would be brought, and the location where the victims would be dropped off after Sohngen was "done." App'x at 38–40. On this record, a rational trier of fact could reasonably conclude that the text messages between

---

[1] Although we have stated in dicta that a substantial step "must be necessary to the consummation of the crime," *Pugh*, 932 F.3d at 20; *United States v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021); *United States v. Manley*, 632 F.2d 978, 987–88 (2d Cir. 1980), in each of those cases we affirmed the attempt convictions in question, even though the acts constituting the criminal attempts were not *necessary* to the consummation of the crime. Since none of those panels even discussed whether the conduct constituting the attempts was necessary to the consummation of the crimes at issue, we think it unlikely that they intended to articulate the governing standard for attempts. Indeed, if that were the standard, rarely could a prosecution for attempt result in a conviction, as there are typically many ways to commit a crime so that the acts done in an attempt to commit a crime would seldom be *necessary* to the consummation of the crime. We do not need to rule on this issue in the instant case because English has not argued that conduct constituting an attempt must be necessary to the commission of the offense and that, in his case, it was not. Nonetheless, we raise a warning flag cautioning courts that will face the question to consider carefully whether that language – uttered only in dicta and most commonly omitted from our Circuit's descriptions of the pertinent standard – truly reflects the standard for this Circuit.

7

English and Sohngen constituted "a substantial step towards the commission of the crime." *Pugh*, 945 F.3d at 20.

*Fourth*, English argues for the first time on appeal that the government constructively amended the indictment as to Counts Five, Six, and Seven because the indictment charged English with "attempt[ing] to recruit, entice, harbor, transport, provide, [and] obtain" the victims to engage in sexual acts, App'x at 25–27, whereas "the [g]overnment's proof at trial consisted solely of evidence that he had advertised [the victims] to Sohngen," English's Br. at 47–48. Relatedly, English argues – again, for the first time on appeal – that the government constructively amended the indictment as to Count Nine by relying on English's communications with Shantasia – rather than his communications with Tatyana and his travel with her from New Jersey to New York, as charged in the indictment – to prove the interstate-commerce element of kidnapping.

A constructive amendment to an indictment occurs where either "an additional element, sufficient for conviction, is added" or "an element essential to the crime charged is altered." *United States v. Percoco*, 13 F.4th 180, 198 (2d Cir. 2021). We have "consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core* of criminality to be proven at trial."

8

*Id*. The core of criminality "involves the essence of a crime, in general terms," but not the "particulars of how a defendant effected the crime." *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012).

With respect to Counts Five, Six, and Seven, the text messages that English sent to Sohngen clearly were evidence of English's attempt to traffic the victims and did not constitute an addition or alteration of "an *element* essential to the crime charged." *Percoco*, 13 F.4th at 198 (emphasis added). As for Count Nine, the indictment gave English fair notice of the core of criminality, which was his kidnapping of Tatyana through interstate commerce. The method by which the government sought to prove the interstate-commerce element concerns only "the particulars of how [English] effected the crime," which "falls outside [the] purview" of the core of criminality. *D'Amelio*, 683 F.3d at 418.

English's alternative argument – that the government's reliance on his communications with Shantasia constituted a prejudicial variance – fares no better. A variance "occurs when the charging terms of an indictment are unaltered, but the trial evidence proves facts materially different from those alleged in the indictment." *United States v. Agrawal*, 726 F.3d 235, 260 (2d Cir. 2013). To obtain relief based on a variance, a defendant must show (1) that the

variance occurred, and (2) that the variance infringed on the defendant's "substantial rights that indictments exist to protect – to inform [the defendant] of the charges against him so that he may prepare his defense and to avoid double jeopardy." *United States v. Kaplan*, 490 F.3d 110, 129 (2d Cir. 2007) (internal quotation marks omitted).

Even if it could be argued that the government's reliance on English's communications with Shantasia constituted a variance, English has failed to show any prejudice to his substantial rights. English was not at risk of a second prosecution for the kidnapping of Tatyana, since the indictment unequivocally specified the "the date and place of the crime, and the crime alleged." *United States v. Knuckles*, 581 F.2d 305, 311 (2d Cir. 1978). Nor did he receive insufficient notice of the charges against him, as both bases for the interstate-commerce element involve "a single set of discrete facts consistent with the charge in the indictment." *D'Amelio*, 683 F.3d at 419. On this record, we cannot conclude that the indictment was constructively amended or prejudicially varied with respect to Counts Five, Six, Seven, or Nine.

*Fifth*, and finally, English argues that the district court's imposition of a twenty-five-year term of imprisonment – to run concurrently on all counts – was

both procedurally and substantively unreasonable. We review procedural and substantive reasonableness of the district court's sentence "under a deferential abuse-of-discretion standard." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020). To establish procedural unreasonableness, English must demonstrate that the district court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). To establish substantive unreasonableness, English must show that the sentence was so "shockingly high . . . or otherwise unsupportable as a matter of law" that it "damage[d] the administration of justice." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

English has failed to articulate any procedural error committed by the district court in imposing the sentences, and we are aware of none. As for his claim of substantive unreasonableness, it bears noting that English's twenty-five-year sentence – though by no means trivial – was well below the life

11

sentence called for under the advisory Sentencing Guidelines.   Moreover, given the serious nature of the crimes for which English was convicted, it cannot be said that the sentence imposed by the district court was so "shockingly high" as to be substantively unreasonable.   *Id.*

We have considered English's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
