12-2681-cr(L)
United States v. Escalera

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of September, two thousand thirteen.

PRESENT:   REENA RAGGI,
           GERARD E. LYNCH,
                 *Circuit Judges*.*

-----------------------------------------------------------------------
UNITED STATES OF AMERICA,
                 *Appellee*,

                 v.                                    Nos.  12-2681-cr(L),
                                                             12-2684-cr(con)

EDUARDO ESCALERA, DAVID ESCALERA,
                 *Defendants-Appellants,*

KELLY SOTT, CAMERON DOUGLAS
                 *Defendants*.**
-----------------------------------------------------------------------

---

* Because Judge Raymond J. Lohier, Jr., originally assigned to the panel, recused himself from this case, the remaining two judges issue this order in accordance with Second Circuit Internal Operating Procedure E(b).

** The Clerk of Court is directed to amend the official caption as shown above.

1

APPEARING FOR APPELLANTS:   DAVID H. MCGILL (Michael S. Kim and Andrew C. Lourie, *on the brief*), Kobre & Kim LLP, New York, New York, *for Defendant-Appellant Eduardo Escalera*.

MICHAEL K. BACHRACH, ESQ. (Richard H. Rosenberg, Esq., *on the brief*), New York, New York, *for Defendant-Appellant David Escalera.*

APPEARING FOR APPELLEE:   TIMOTHY D. SINI (Justin Anderson, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments entered on June 28, 2012, are AFFIRMED.

Defendants David Escalera and Eduardo Escalera appeal their convictions, following separate trials, for conspiracy to possess with intent to distribute methamphetamine in a form commonly known as "crystal methamphetamine." See 21 U.S.C. §§ 841(a)(1) and 846. Defendants challenge (1) the sufficiency of the evidence supporting their convictions and (2) the admission of certain evidence at their trials. Eduardo further faults the district court for failing (3) to give a multiple-conspiracy instruction and (4) to hold an evidentiary hearing on possible juror misconduct. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

2

I. Sufficiency of the Evidence

We review defendants' sufficiency challenges de novo and will affirm their convictions if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); accord United States v. Jones, 531 F.3d 163, 168 (2d Cir. 2008). To prove conspiracy, the evidence must show that two or more persons knowingly agreed to participate "in a collective venture directed toward a common [criminal] goal." United States v. Chavez, 549 F.3d 119, 125 (2d Cir. 2008) (internal quotation marks omitted). The evidence need not show that the conspirators had agreed on the precise details of the scheme as long as it shows their agreement on its essential nature, see United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000), which in a narcotics conspiracy requires "that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged," United States v. Santos, 541 F.3d 63, 70–71 (2d Cir. 2008). Because "a conspiracy by its very nature is a secretive operation," id. at 70 (internal quotation marks omitted), a defendant's agreement to join in such a scheme can reasonably be inferred from circumstantial evidence, see In re Terrorist Bombings of U.S. Embassies in East Africa, 552 F.3d 93, 113 (2d Cir. 2008). Applying these principles here, we conclude that defendants' sufficiency challenges fail on the merits.

3

A. David Escalera

David construes the charged conspiracy as limited to wholesale drug distribution, and he argues that evidence of his retail sales of crystal methamphetamine were necessarily insufficient to prove his membership in the charged conspiracy. He further submits that his attempted wholesale transaction with Cameron Douglas in August 2009 could not prove his membership in the charged conspiracy because Douglas was then a government cooperator and Eduardo was not involved in the attempted transaction at all due to a falling out between Douglas and Eduardo. Both the premise and the conclusions are flawed.

The indictment charged David and Eduardo Escalera, together with others, with conspiring from August 2006 to August 2009 to distribute or possess with intent to distribute 500 grams or more of crystal methamphetamine in the Southern District of New York and elsewhere. The indictment drew no distinction between wholesale and retail distribution; thus, evidence of either or both could support the jury's verdict.

Such evidence was provided at David's trial through the testimony of Kelly Sott and Cameron Douglas, who testified that the Escalera brothers worked together to deliver drugs to customers, and that both David and Eduardo had provided each of them with personal use quantities of crystal methamphetamine from 2006 to 2009. Although David argues that the credibility of both witnesses was suspect, we must assume that the jury resolved credibility in favor of the government. See United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010). When we do so, this testimony, by itself, was enough to support

4

David's conviction for conspiring with his brother Eduardo to distribute an unspecified quantity of crystal methamphetamine, the lesser included crime for which he was found guilty. See generally United States v. Diaz, 176 F.3d 52, 92 (2d Cir. 1999) (holding that conviction can be sustained on basis of testimony of single accomplice, so long as testimony is not incredible on its face and capable of establishing guilt beyond a reasonable doubt). Indeed, this testimony was corroborated by evidence that David was arrested in 2010 while driving with retail quantities of crystal methamphetamine in his car and $3,000 in cash, evidence consistent with the home delivery method of operation that Douglas and Sott ascribed to the Escaleras.

Further, Douglas testified that the brothers also engaged in wholesale transactions. From 2006 to 2007, Eduardo supplied Douglas with wholesale quantities of crystal methamphetamine for shipment to New York, and in August 2009, David agreed to sell Douglas—who was then cooperating with authorities—a pound of crystal methamphetamine for $20,000, a plan further evidenced by text messages. From this evidence, together with Sott's testimony that David was present during wholesale transactions between Eduardo and Douglas, a reasonable jury could infer that the brothers were confederates in a scheme to distribute crystal methamphetamine, operating at both the retail and wholesale levels. See United States v. Santos, 541 F.3d at 73 (holding that intent and agreement may be inferred from defendant's knowledge of conspiracy and actions in furtherance of its object); cf. United States v. Aminy, 15 F.3d 258, 260 (2d Cir.

1994) (stating that defendant's knowing and intentional participation in criminal activity occurring in his presence can be inferred from involvement in other similar narcotics transactions). Nor is a different conclusion warranted from the lack of direct evidence of Eduardo's involvement in David's August 2009 dealings with Douglas, as there was no evidence that Eduardo withdrew from the conspiracy with his brother, see Smith v. United States, 133 S. Ct. 714, 717 (2013) (recognizing that defendant's membership in ongoing conspiracy continues until he withdraws), allowing a reasonable jury to infer that David simply assumed a larger role in the scheme during a falling out between Eduardo and Douglas.

We therefore reject David Escalera's sufficiency challenge as without merit.

B. Eduardo Escalera

The same conclusion obtains with respect to Eduardo. At his trial, Sott testified that both Eduardo and David sold her crystal methamphetamine for her personal use from 2005 to 2009, both in California and New York, and that the brothers also made retail sales at bars, restaurants and clubs. Insofar as Eduardo, like David, challenges Sott's credibility, we assume the jury resolved this point in favor of the government. See United States v. Payne, 591 F.3d at 60. We note moreover that Sott's testimony about Eduardo's knowing participation in a methamphetamine distribution scheme found corroboration in the parties' stipulation that, in January 2008, Eduardo admitted possessing crystal methamphetamine in a Los Angeles nightclub with the intent to sell it. Sott further

6

testified that, on approximately 12 occasions, Eduardo supplied her and Douglas with pound quantities of crystal methamphetamine that they then resold to a customer named "Marais" in New York. Various aspects of her testimony about these transactions were corroborated by telephone, Federal Express, and Western Union records.

Eduardo argues that because this evidence, if credited, would have supported his conviction for trafficking in over 500 grams of crystal methamphetamine, the jury's decision not to hold him accountable for that quantity indicates that it rejected the evidence, thus leaving a record insufficient to convict him of trafficking in 50 grams. Eduardo's argument ignores the jury's right to accept testimony in whole or in part, and to find, even with respect to testimony that it credited, that it was sufficient to prove certain facts beyond a reasonable doubt and insufficient to prove others. See generally United States v. Josephberg, 562 F.3d 478, 487 (2d Cir. 2009). Thus, a reasonable jury could have credited Sott's testimony and concluded beyond a reasonable doubt therefrom that the Escalera brothers supplied her and Douglas with more than 50 grams of crystal methamphetamine over several years, but not have been convinced beyond a reasonable doubt—particularly in the absence of any seizure—that the amount trafficked exceeded 500 grams. We will not look further into the jury's thought processes, mindful that they sometimes reflect compromise or lenity. See United States v. Powell, 469 U.S. 57, 64–65, 67 (1984). Indeed, that rule applies even when juries return inconsistent verdicts, which is not this case. See United States v. Acosta, 17 F.3d 538, 546 (2d Cir. 1994). We look

7

only to the verdict the jury returned, and we will uphold that verdict as long as the evidence was sufficient to permit a reasonable jury to reach that conclusion.

Because the trial record evidence permitted a reasonable jury to conclude that Eduardo Escalera conspired with his brother David and others to traffic in 50 grams or more of crystal methamphetamine, we reject his sufficiency challenge as without merit.

## II. Evidentiary Rulings

Insofar as both defendants complain of the receipt of inadmissible evidence, they carry a heavy burden because we review a district court's evidentiary rulings only for abuse of discretion, see United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009), and we will reverse only if an evidentiary error affected a defendant's substantial rights in influencing the jury verdict, see United States v. Madori, 419 F.3d 159, 168 (2d Cir. 2005). That is not this case.

### A. David Escalera

Persisting in his contention that the charged conspiracy was limited to wholesale trafficking in crystal methamphetamine, David submits that the district court erred in admitting evidence of (1) his retail sales of crystal methamphetamine to Sott and Douglas, (2) his retail sales of other drugs to Sott and Douglas, (3) his apparent retail sales at the time of his arrest, and (4) Douglas's wholesale cocaine transactions with Pedro Neri.

#### 1. Retail Sales of Crystal Methamphetamine to Sott, Douglas, and Others

The first and third points merit little discussion because, as we have already

8

concluded, the charged conspiracy involved the Escalera brothers' retail and wholesale distribution of crystal methamphetamine. Thus, evidence of David's retail sales of crystal methamphetamine to Sott and Douglas, as well as evidence of his retail sales at the time of his arrest, were properly admitted to prove the charged crime. See United States v. Ramirez, 894 F.2d 565, 567–69 (2d Cir. 1990) (upholding admission of subsequent attempted cocaine sale to show knowing participation in cocaine trade during earlier transaction).

### 2. Retail Sales of Other Drugs to Sott, Douglas and Others

As for David's uncharged retail sales of cocaine, heroin, and ecstasy to Sott, Douglas, and unnamed others at the time of his arrest, to the extent these sales were "inextricably intertwined" with David's retail sale of crystal methamphetamine to these customers, the district court acted within its discretion in admitting the evidence "to complete the story of the crime on trial." United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010) (holding that "evidence of uncharged criminal activity is not considered 'other crimes' evidence 'if it arose out of the same transaction or series of transactions as the charged offense'" (quoting United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000))). Even if the sales were not inextricably intertwined, the district court would have had the discretion to admit them as background to the conspiracy, helping the jury understand how the illegal relationship among the participants developed, and how David's role in the conspiracy evolved depending on his brother's availability. See United States v.

9

Williams, 205 F.3d 23, 33–34 (2d Cir. 2000).

David nevertheless submits that the government did not so limit its use of the other drugs evidence, but rather employed it for the impermissible purpose of insinuating propensity, see Fed. R. Evid. 404(b), repeatedly referencing other drug sales in summation to argue that David was a "drug dealer." We need not conclusively decide if the prosecution's arguments can fairly be construed to urge propensity because, even if we were to decide that question in David's favor, we would find the error harmless given that the uncharged retail sales "did not involve conduct more serious than the charged crime," United States v. Williams, 205 F.3d at 34, and the district court charged the jury on multiple occasions that the government's burden was to prove beyond a reasonable doubt that David was a participant in a conspiracy to distribute or possess with intent to distribute methamphetamine. Upon review of the record in its totality, which strongly supported David's conviction on that charged conspiracy, we conclude "with fair assurance" that the uncharged retail sales of other drugs "did not substantially influence" the jury verdict, making any possible error in summation harmless. United States v. McCallum, 584 F.3d 471, 478 (2d Cir. 2009).

David further contends, for the first time on appeal, that the government failed to provide the requisite notice of its intent to introduce evidence of uncharged retail drug sales. See Fed. R. Evid. 404(b)(2). We review such a forfeited claim only for plain error, see United States v. Marcus, 130 S. Ct. 2159, 2167 (2010), and identify no such error here

10

because Jencks Act material provided pursuant to 18 U.S.C. § 3500 prior to trial disclosed that Douglas and Sott were expected to testify that David sold them quantities of heroin, cocaine, and crystal methamphetamine, and text messages referencing David's sales of ecstasy were the subject of a pretrial suppression motion. This was sufficient to provide David with notice. See United States v. Kaiser, 609 F.3d at 571 n.3.

### 3. Eduardo's Cocaine Transactions

David asserts that he was not involved in a wholesale cocaine transaction among Eduardo, Douglas, and Neri, making evidence of that transaction irrelevant and inadmissible at his trial. See Fed. R. Evid. 401. As the government notes, however, the evidence was relevant to Douglas's credibility because it established that he was not just a user of cocaine, but a seller of that drug. Thus, the district court acted within its discretion in allowing the government to elicit testimony of conduct damaging to this cooperating witness's credibility. See United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (holding that government entitled to elicit such evidence to avoid appearance that it was concealing impeaching evidence from jury).

In sum, we identify no abuse of discretion by the district court in its evidentiary rulings at David Escalera's trial.

### B. Eduardo Escalera

Eduardo claims that the district court erred in allowing the government to introduce evidence of a "prior drug crime and conviction." Eduardo Escalera Br. 1. In fact, it was

11

precisely to avoid the introduction of any evidence of a conviction that the parties entered into a stipulation indicating that Eduardo admitted possessing methamphetamine in a Los Angeles club on January 20, 2008, intending to distribute it. Insofar as the charged crime required the government to prove Eduardo's agreement to the charged conspiratorial objective—to possess crystal methamphetamine with intent to distribute it—this stipulation constituted direct evidence of the requisite knowledge and intent and, thus, was admissible as "part of the very act charged." United States v. Concepcion, 983 F. 2d 369, 392 (2d Cir. 1992). The stipulation was further probative in corroborating Sott's testimony that the Escaleras conducted retail sales of crystal methamphetamine in clubs. It also was some evidence that the conspiracy continued through the charged time frame.

Moreover, the considerable probative value of the stipulation was not outweighed by the possible prejudice based on Eduardo's speculation that the jury erroneously relied on the stipulation as the sole evidence of his involvement in the charged conspiracy. Such speculation is unwarranted in light of Sott's testimony, which we must assume the jury credited.

Accordingly, we identify no abuse of discretion in the district court's admission of the parties' stipulation regarding Eduardo's possession of methamphetamine in a Los Angeles club.

III. Multiple Conspiracy Charge

Eduardo argues that district court erred by not giving the jury a multiple conspiracy

charge. To secure reversal on that ground, the defendant must show not only that there was evidence of separate networks operating independently of each other, but that he suffered "substantial prejudice" as a result of the court's failure to give the requested charge. United States v. Cusimano, 123 F.3d 83, 89 (2d Cir. 1997). A defendant who proceeds to trial alone can rarely show such prejudice as there is usually no risk of prejudicial spillover. See id. In any event, "[a] refusal to give a multiple conspiracy charge does not prejudice defendant where there was ample proof before the jury for it to find beyond a reasonable doubt that defendant was a member of the conspiracy charged in the indictment." United States v. Vasquez, 113 F.3d 383, 386 (2d Cir. 1997); see also United States v. Maldonado-Rivera, 922 F.2d 934, 964 (2d Cir. 1990). Here, even if the trial record admits the possibility of multiple conspiracies, there was ample proof to support the single conspiracy charged in the indictment for reasons already discussed in our rejection of Eduardo's sufficiency challenge. Moreover, the district court clearly instructed the jury that the government's burden was to prove the conspiracy charged in the indictment beyond a reasonable doubt. Finally, the government did not exceed the bounds of permissible advocacy in urging the jury to reject Eduardo's multiple conspiracy arguments. See United States v. Williams, 690 F.3d 70, 75 (2d Cir. 2012); United States v. Elias, 285 F.3d 183, 190 n.3 (2d Cir. 2002).

Accordingly, Eduardo cannot show that he was prejudiced by the district court's decision not to give a multiple conspiracy charge in this case.

13

IV. Jury Hearing

Eduardo faults the district court for not conducting an evidentiary hearing after a juror, in a post-verdict note to the court complaining about verbal abuse by other jurors during deliberations, noted that a fellow juror admitted that her brother was a drug addict, a fact that no juror had disclosed during voir dire. Our precedent requires a trial judge to hold a post-trial jury hearing when "reasonable grounds for investigation exist." United States v. Vitale, 459 F.3d 190, 197 (2d Cir. 2006). "Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." Id. (internal quotation marks omitted). We accord trial judges considerable deference in identifying circumstances warranting a post-trial jury hearing, and we will not second-guess their assessments absent abuse of discretion. See United States v. Stewart, 433 F.3d 273, 304 (2d Cir. 2006). We identify no abuse here.

Even if we assume arguendo that an unidentified juror made the remark about a brother's addiction as reported by the complaining juror, that non-disclosure would not be indicative of impropriety warranting a new trial absent a showing that the juror "failed to answer honestly a material question on voir dire" and that "a correct response would have provided a valid basis for a challenge for cause." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); accord United States v. Langford, 990 F.2d 65, 68–70 (2d Cir. 1993). Here, Eduardo points to no record evidence that the juror intentionally

14

failed to disclose the brother's addiction, much less that the reason for the non-disclosure was to avoid excusal (as opposed to embarrassment) or to conceal some bias that could have prejudiced the trial. Cf. United States v. Colombo, 869 F.2d 149, 150–51 (2d Cir. 1989). Nor can such an inference be drawn from the mere report that, upon the start of deliberations, the juror was one of those favoring conviction. Because the jurors had then heard all the evidence, a juror's prompt assessment of that evidence cannot by itself suggest impropriety.

As we have long recognized, trial courts "should be hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct, or extraneous influences." United States v. Sun Myung Moon, 718 F.2d 1210, 1234 (2d Cir 1983); accord United States v. Ianniello, 866 F.3d 540, 543 (2d Cir. 1989). Here, the juror who wrote to the court was plainly disgruntled with what he perceived to be his mistreatment during deliberations because he came to a conviction decision more slowly than his fellow jurors. As the district court noted, however, nowhere does the complaining juror state that his own vote was based on anything other than his honest assessment of the evidence and the law as charged by the court. Moreover, nowhere does the complaining juror say that the vote of the juror with the addict brother was based on anything other than her honest assessment of the evidence in light of the court's charge. Indeed, nowhere does he suggest that the verdict returned by the jury as a whole was infected by bias or any impropriety. Under these circumstances, we conclude that the

15

district court acted within its discretion in denying Eduardo's request for an evidentiary hearing or a new trial based on purported juror misconduct.

V.  Conclusion

We have considered the parties' remaining arguments on appeal and conclude that they are without merit.   Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

16